UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 18-1574-GW-SPx | Date | May 14, 2020 |
|---|---|---|---|
| Title | *Jose Gonzalez v. Cardinal Health 200, LLC, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | Terri A. Hourigan | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Marcus J. Bradley | John P. Nordlund |

**PROCEEDINGS:** **TELEPHONIC HEARING RE: PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [31]**

The Court's tentative ruling is circulated and attached hereto. Court and counsel confer. For reasons stated on the record, the Motion is continued to May 21, 2020 at 8:30 a.m. A new proposed order and the declaration of Defendant are to be filed by noon on May 18, 2020.

: 06

Initials of Preparer  JG

<u>*Jose Gonzalez v. Cardinal Health 200, LLC et al*</u>; Case No. 5:18-cv-01574-GW-(SPx)
Tentative Ruling on Motion for Preliminary Approval of Class Settlement

**I.  Background**

    A.  Introduction

Plaintiff Jose Gonzalez, individually and on behalf of all others similarly situated, sues Defendant Cardinal Health 200 ("Cardinal") for: (1) failure to pay all wages; (2) failure to pay overtime compensation, in violation of Welfare Commission Orders and California Labor Code §§ 510, 1194; (3) failure to pay paid time off, in violation of Cal. Labor Code § 227.3; (4) failure to pay wages at the time of termination, in violation of Cal. Labor Code §§ 201-203; (5) failure to provide proper wage statements, in violation of Cal. Labor Code § 226(a); (6) unfair business practices, in violation of Cal. Business and Professions Code § 17200; (7) failure to pay all wages and overtime compensation, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; (8) violation of Cal Labor Code §§ 2698 *et seq.* ("PAGA"); (9) failure to provide meal periods; and (10) failure to provide rest breaks.  *See generally* Second Amended Complaint ("SAC"), Docket No. 28.

Plaintiff now moves the Court, unopposed, for preliminary approval of a class action settlement and conditional certification of the settlement class.  *See generally* Motion for Preliminary Approval ("Motion"), Docket No. 33.

    B.  Factual Background

Plaintiff alleges the following: Defendant engages in the marketing and distribution of medical supplies, as well as various other services.  SAC ¶ 14.  Plaintiff worked for Defendant as a non-exempt hourly employee from approximately 1989 to June 2, 2017.  *Id.* ¶ 9.  Plaintiff brings this action on behalf of Defendant's California-based non-exempt employees.  *Id.* ¶ 23. Plaintiff alleges that Defendant improperly:

- Rounded employee work time, as a result of which Plaintiff and class members were not paid all wages due, including overtime wages;
- Failed to pay Plaintiff and class members overtime pay for all overtime hours worked;
- Failed to pay Plaintiff and class members all wages owed at termination;
- Failed to pay Plaintiff and other class members all paid time off ("PTO") owed

1

> upon termination;
> - Failed to maintain accurate wage statements for Plaintiff and other class members;
> - Failed to provide adequate meal breaks; and
> - Failed to provide adequate rest breaks.

*Id.* ¶ 24. Plaintiff alleges that he and class members encountered the following violations during employment with Defendant:

> - Defendant had a uniform policy of rounding hourly employees' time, resulting in Plaintiff and class members not being compensated for all the time they worked, including overtime compensation;
> - Plaintiff's last day of work was June 1, 2017, and he was terminated on June 2, 2017. Defendants did not issue his final pay until June 3, 2017. At that time, Plaintiff had an available balance of 197 of PTO available, but only 37 hours was paid out on the June 3, 2017 pay stub.

*Id.* ¶ 25.

### C. Proposed Settlement

The Stipulation and Agreement of Settlement (the "Settlement") provides the following details and provisions. *See generally* Settlement, Docket No. 31-1. On March 5, 2019, the parties participated in mediation with attorney Michael E. Dickstein, a mediator with a substantial background in resolving employment cases. *See* Declaration of Marcus J. Bradley in Support of Plaintiff's Motion, Docket No. 31-1, ¶ 10. The parties continued mediation with Mr. Dickstein for several months, executing the Settlement Agreement in November 2019. *Id.* The negotiations culminated in an agreement to settle all claims for a total payment of $875,000 (the "Gross Settlement Amount") by Defendant. Motion at 5. The Settlement Class refers to all individuals formerly employed by Defendant in the state of California and classified as hourly, non-exempt employees from September 28, 2016 through the date of approval of the Settlement Agreement. Settlement ¶ 1.2. The non-reversionary Gross Settlement Amount will be distributed in the following manner: settlement payments to participating class members; (2) thirty-three and a third percent of the Gross Settlement amount (up to $291,666.67) in attorneys' fees and up to $20,000 in litigation costs to Class Counsel; (3) $50,000 to settle PAGA claims, of which a $37,500 payment will be made to the Labor & Workforce Development Agency

("LWDA"), with the rest to the Net Settlement Amount; (4) settlement administration costs of up to $17,000; and (5) a requested service payment of up to $5,000 to Plaintiff. Settlement ¶¶ 5.1-5.4. The Net Settlement Amount is therefore estimated to be at least $503,833.33. Motion at 5. The Net Settlement Amount will be apportioned among settlement class members based on the number of workweeks worked during the class period. Settlement ¶ 4.2.

## II. Legal Standard

Under Ninth Circuit precedent, there is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (internal quotation marks omitted). Nonetheless, Federal Rule of Civil Procedure 23(e) requires district courts to approve class action settlements.[1] "[S]ettlement class actions present unique due process concerns for absent class members[.]" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *see Allen*, 787 F.3d at 1223 ("[T]he district court has a fiduciary duty to look after the interests of those absent class members."). In instances where parties arrive at a settlement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Preliminary approval of class action settlements invokes a two-step inquiry. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 672727, at *12 (N.D. Cal. Feb. 16, 2017). At the first step, courts decide if a class exists. *Staton*, 327 F.3d at 952. "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). At the second step, courts consider "whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. If the parties settle before class certification, the Ninth Circuit requires "a more probing inquiry than may normally be required under Rule 23(e)." *Id.* During the preliminary approval stage, courts "determine whether the settlement falls 'within the range of possible approval.'" *Booth v. Strategic Realty Tr., Inc.*, 2015 WL 3957746, at *6 (N.D. Cal. June 28, 2015) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D.

---

[1] The Court recognizes that as of December 1, 2018, an amended version of Rule 23 is in effect. As such, the Court follows the amended Rule 23 in all respects.

3

Cal. 2007)). Courts examine "the settlement taken as a whole, rather than the individual component parts . . . for overall fairness." *Hanlon*, 150 F.3d at 1026. Courts cannot "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Id.* (internal quotation marks and citation omitted).

### III.   Discussion

#### A.   Class Certification

Under the foregoing legal standard, the Court would begin by deciding whether class certification is warranted. The proponent of class treatment bears the burden of demonstrating that class certification is appropriate. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012); *In re Northern Dist. of California, Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982); *see also Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 629 (9th Cir. 2018) ("A representative plaintiff may sue on behalf of a class when the plaintiff affirmatively demonstrates the proposed class meets the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation."). Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996).

Rule 23 requires the party seeking certification to satisfy all four requirements of Rule 23(a)[2] and at least one of the subparagraphs of Rule 23(b).[3] *Id.* at 1234. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores*, 564 U.S. at 350. The Court is permitted to consider any material necessary to its determination, though it should not go so far as to engage in a trial of the merits. *Id.* at 350-51 (noting that the "rigorous analysis" required at class certification will "[f]requently

---

[2] Rule 23(a) requires that the party/parties seeking certification show:
  (1)   the class is so numerous that joinder of all members is impracticable;
  (2)   there are questions of law or fact common to the class;
  (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
  (4)   the representative parties will fairly and adequately protect the interests of the class.
Fed. R. Civ. P. 23(a).

[3] Here, Plaintiff seeks certification under Rule 23(b)(3). *See* Motion at 7.

4

. . . entail some overlap with the merits of the plaintiff's underlying claim"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[I]t is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits *if they overlap* with the Rule 23(a) requirements.") (emphasis added); *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 n.15 (9th Cir. 2009); *Blackie v. Barrack*, 524 F.2d 891, 900-01 & n.17 (9th Cir. 1975); *Sali*, 889 F.3d at 630 ("At this preliminary stage, a district court may not decline to consider evidence solely on the basis that the evidence is inadmissible at trial.").

### 1. Numerosity

Rule 23(a)(1) requires a demonstration that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the proposed settlement class includes approximately 1,820 individuals. Motion at 7. "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Because the proposed class is large enough that joinder of all members would be impracticable, the Court finds the numerosity requirement satisfied.

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Courts must construe this rule "permissively." *Hanlon*, 150 F.3d at 1019. "All questions of fact and law need not be common to satisfy the rule." *Id.* "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores*, 564 U.S. at 359 (internal quotation marks and brackets omitted). "Their claims must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* at 350. "When the claim is that an employer's policy and practices violated labor law, the key question for class certification is whether there is a consistent employer practice that could be a basis for consistent liability. Class certification is usually appropriate where liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008), aff'd sub nom. *Kamar v. RadioShack Corp.*, 375 F. App'x 734 (9th Cir. 2010).

In this case, Plaintiff asserts that the class members share the overarching common question of whether Defendant's employment policies and procedures violated the law. *See* Motion at 11. For example, Plaintiff asserts that Defendant had a uniform policy of rounding employees' start and stop times. There is therefore a common question as to whether Defendant's practice of rounding its employees' start and stop time entries violated the law with regard to payment of all wages owed and overtime. Class members also share common questions as to whether Defendant violated the law by failing to provide or permit its employees to take meals breaks and by failing to pay all premiums for missed and late meal breaks. As such, the Court would find that Plaintiff has demonstrated commonality.[4]

### 3. Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose . . . ." *Id.* (citation and internal quotation marks omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (citation and internal quotation marks omitted); *see also General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("*Falcon*") (indicating that class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members"); O'Connell & Stevenson, *Rutter Group Practice Guide: Civil Procedure Before Trial: Ch. 10 – Class Actions*, ¶ 10:289, at 10-93 (The Rutter Group 2018) ("A plaintiff's claim is typical if it: arises from the same event or practice or course of conduct that gives rise to the claims of other class members; and is based on the same legal theory as their claims."). The representative plaintiffs' claims need not be identical to those of the class, but rather need only be "reasonably co-extensive with those of absent class members . . . ." *Hanlon*, 150 F.3d at 1020. In practice, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 157 n.13.

---

[4] Plaintiff does not seek certification as to its seventh cause of action for violation of the FLSA or its eighth cause of action under PAGA. *See* Motion at 12 n.5.

6

Here, the claims of Gonzalez and the other Settlement Class Members arise from the same alleged conduct. Like the class as a whole, Gonzalez alleges that he was subjected to Defendant's practice of rounding start and stop time entries, failing to provide meal and rest breaks, and failing to provide accurate wage statements with double time. *See* Motion at 13. The Court finds that Gonzalez's claims are typical of those asserted by the class as a whole.

*4. Adequacy*

Representative parties must also fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). Generally speaking, "[w]hether the class representative[] satisf[ies] the adequacy requirement depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (omitting internal quotation marks) (quoting *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) and *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994)); *see Ellis*, 657 F.3d at 985 ("To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"); *see also Sali*, 889 F.3d at 634; *Staton*, 327 F.3d at 957; *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ("The record indicates clearly that [the class representative] understands his duties and is currently willing and able to perform them. The Rule does not require more.").

At this point, the Court is not aware of any adequacy problems. Neither Gonzalez nor class counsel have any apparent conflicts of interest. *See* Motion at 16. Plaintiff's claims are typical of the other Settlement Class Members such that they are aligned in their interests. The firm representing Plaintiff, Bradley/Grombacher, LLP, has significant experience litigating wage and hour class actions. *See* Bradley Decl. ¶¶ 33-42. Further, Plaintiff and counsel have diligently pursued this action on behalf of the class. They have filed two amended complaints and engaged in mediation and negotiations from March 2019 through November 2019, when they reached the proposed settlement agreement. *See* Motion at 17. The Court would thus find the adequacy requirement satisfied.

*5. Predominance and Superiority*

Because Plaintiffs seek to certify a class under Rule 23(b)(3), the Court must analyze

whether the proposed class satisfies the predominance and superiority inquiry. Rule 23(b)(3) provides that:

> [a] class action may be maintained if Rule 23(a) is satisfied and if:
>
> . . .
>
> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "[A]n individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (quoting *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).

Here, Plaintiff provides minimal explanation of why the predominance and superiority requirements are satisfied. As to predominance, Plaintiff merely states that "[t]here are no individualized defenses or issues that preclude certification or take center stage over the common issues that can be resolved for the class in one fell swoop." Motion at 14. And while Plaintiff states that individual adjudication would be unnecessarily burdensome and impractical, Plaintiff does not actually explain why a class action is superior. *Id.* Plaintiff does not address any of the factors described in Rule 23(b)(3) as pertinent to the predominance or superiority analysis. Without some actual discussion of predominance and superiority, particularly in the context of Rule 23(b)(3), the Court cannot assess those two factors. Therefore, the Court would find that Plaintiffs have not yet demonstrated that the predominance and superiority requirements are satisfied.

    B. Preliminary Approval of Settlement

The Ninth Circuit has noted various factors for district courts to consider in deciding whether a class action settlement is fair, adequate, and reasonable:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation omitted).

In addition, the Ninth Circuit instructs district courts to scrutinize potential red flags indicating collusion. "Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Subtle signs of collusion include:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class;" and

> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* (internal quotation marks and citations omitted).

"[T]he preliminary approval stage [i]s an 'initial evaluation' of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties." *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013). A court need not conduct a complete analysis of the fairness factors at this time because "some of these 'fairness' factors cannot be fully assessed until the Court conducts the final approval hearing[.]" *Lusby v. Gamestop Inc.*, 297 F.R.D. 400, 412 (N.D. Cal. 2013). Instead, at this stage, "[p]reliminary approval of a settlement and notice to the class is appropriate if '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within

9

the range of possible approval.'" *Johnson v. Quantum Learning Network, Inc.*, 2016 WL 4529607, at *1 (N.D. Cal. Aug. 30, 2016) (quoting *In re Tableware*, 484 F. Supp. 2d at 1079). The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge[.]" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000) (internal quotation marks omitted).

Under recent amendments to Rule 23(e) effective December 1, 2018,[5] district courts must consider a list of factors delineated in Rule 23(e)(2):

> **(2) *Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> **(A)** the class representatives and class counsel have adequately represented the class;
>>
>> **(B)** the proposal was negotiated at arm's length;
>>
>> **(C)** the relief provided for the class is adequate, taking into account:
>>
>>> **(i)** the costs, risks, and delay of trial and appeal;
>>>
>>> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>>
>>> **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
>>>
>>> **(iv)** any agreement required to be identified under Rule 23(e)(3);
>>
>> and
>>
>> **(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Regarding these recent amendments, the Advisory Committee recognizes that federal "[c]ourts have generated lists of factors" to decide the fairness, reasonableness, and adequacy of a settlement, and that "each circuit has developed its own vocabulary for expressing these concerns." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Recognizing that, the Advisory Committee explained that it did not intend to "displace any factor [used by federal courts], but rather to focus the court and the lawyers on the core concerns of

---

[5] After propagating certain amendments, the Supreme Court transmitted those amendments to Congress, instructing that those amendments "shall take effect on December 1, 2018, and shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." Order Submitting Amendments to Federal Rules of Civil Procedure at 3 (April 26, 2018), https://www.supremecourt.gov/orders/courtorders/frcv18_5924.pdf; *see generally, In re Pangang Grp. Co., LTD.*, 901 F.3d 1046, 1050 (9th Cir. 2018) (addressing the amendment process).

10

procedure and substance that should guide the decision whether to approve the proposal."[6] *Id.* As such, to the extent possible the Court would apply the factors listed in Rule 23(e)(2) through the lens of the Ninth Circuit's factors and existing relevant precedent. The Court would also take heed of the Advisory Committee's warning not to let "[t]he sheer number of factors . . . distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

> *1. Whether the Class is Adequately Represented and the Settlement is the Product of Serious, Informed, Non-Collusive Negotiations*

Addressing whether the class is adequately represented and the Settlement is the product of serious, informed, non-collusive negotiations, the Court first looks to whether the parties engaged in an adversarial process to arrive at that agreement. Counsel have actively litigated the case since it was filed in 2018. *See* Docket. The parties engaged in substantial discovery before reaching this settlement, allowing them to fully assess the value of the claims involved. *See* Bradley Decl. ¶¶ 7-9. In March 2019, the parties engaged in a full-day mediation session with Michael Dickstein, an experienced wage and hour mediator. *Id.* ¶ 10. While they were unable to reach an agreement in that session, the parties continued negotiating, with Mr. Dickstein's assistance, until finally reaching an agreement in November 2019. *Id.*

In other words, only after significant discovery, the use of a mediator, and prolonged negotiations did the parties enter into the Settlement. That order and process matters to the Court. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested.") (citations omitted); *In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (holding that the parties' use of mediator and fact that significant discovery had been conducted "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement"); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (noting that the parties' use of a mediator "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel."). Though the Court does not grant undue weight to the

---

[6] "[T]he Advisory Committee Notes provide a reliable source of insight into the meaning of a rule . . . ." *See United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002).

11

recommendation of the parties' counsel, the fact they worked on these cases at length and have an understanding of their risks, also cuts slightly in favor of finding the settlement procedurally robust and the product of arm's length negotiations. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. Mar. 9, 1989) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.") (quotation omitted).

None of the "subtle signs of collusion" that the Ninth Circuit has warned of are present here. *In re Bluetooth, 654 F.3d at 947*. The gross settlement amount is $875,000, covering the period of September 28, 2016 through the granting of preliminary approval, with attorneys' fees of up to $291,666.67 (33 1/3 % of the gross settlement amount). *See* Motion at 5-6. While the Court will conduct a review of the reasonableness of the requested attorneys' fees when Plaintiffs' counsel submits such a motion, the Court would not find that the agreed-upon amount represents a per se disproportionate distribution for purposes of determining collusion. Attorneys' fees will be paid from the gross settlement amount, so the case does not present a "clear sailing" arrangement. *See id*. The Settlement is not contingent on the Court approving counsel's application for attorneys' fees. *See id.* at 31. Finally, there is no indication that any attorneys' fees or costs not awarded will revert back to Defendants. As such, the Court would not find that any indicators of collusion weigh against approval.

In sum, it appears from the course of proceedings and the proposed Settlement that the class representatives and class counsel have adequately represented the class and that the proposal was negotiated at arm's length, which goes to at least two of the factors in the recently amended Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(2)(A)-(B). The above (especially the collusion red flags analysis) speaks to some degree to Rule 23(e)(2)(C), but the Court will include other relevant analysis for that determination below. The Court would conclude that this factor weighs in favor of preliminary approval.

### 2. Obvious Deficiencies

"In application, 'obvious deficiencies' has become a useful catch-all for problems other than preferential treatment or inadequate consideration." *See Philliben v. Uber Techs., Inc.*, No. 14-CV-05615-JST, 2016 WL 4537912, at *4 (N.D. Cal. Aug. 30, 2016); *id.* at *4 n.3 ("Examples of individual shortcomings identified in other cases include ambiguity regarding the consideration to be received by class members . . . an overly broad release, too brief an opt-out

12

period, and the failure to provide class members the opportunity to object to Plaintiff's motion for attorney's fees and costs." (internal quotation marks and citations omitted)). The Court does not find any obvious deficiencies in the Settlement. The gross settlement amount is a non-reversionary payment of $875,000, to be shared by a total class of approximately 1,820 individuals. *See* Motion at 7. The net settlement amount of approximately $503,833.33 will be divided among settlement class members on a pro rata basis, based on the number of workweeks worked during the class period.[7] *Id.* at 6; Settlement ¶ 4.2. The Settlement also allows class members to object and to opt out. *See* Brady Decl. Ex. B. The Settlement does not appear to define released claims too broadly: it provides that class members release wage and hour claims.[8] *See* Settlement ¶ 7.1; Motion at 31. The parties have agreed to retain a third-party administrator to provide notification services and claims administration. *See* Declaration of Michael Bui ("Bui Decl."), Docket No. 31-3, ¶¶ 2-3. Finally, as discussed above, the Settlement was reached after years of litigation, and none of the signs of collusion are present. Based upon this showing, the Court does not see any obvious deficiencies with the proposed settlement.

### 3. *Preferential Treatment*

The Court is inclined to find that the Settlement does not improperly provide preferential treatment to any class member. As explained above, the settlement form will pay class members based on the number of workweeks worked during the class period. *See* Settlement ¶ 4.2. This will result in each class member's recovery being based on the specific harms that class member experienced. *See, e.g., Dearaujo v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473, at *12 (E.D. Cal. June 30, 2016) (finding at the preliminary approval stage that a "mechanism for distributing the settlement funds proportionally based on the total number of weeks worked" was "reasonable").

The Court does not see a problem with the named plaintiff receiving up to $5,000 in class representative awards. *See* Motion at 5. Under Ninth Circuit precedent, service awards to named plaintiffs in a class action are permissible and do not necessarily render a settlement

---

[7] The proposed Settlement does not provide additional payment for terminated employees who may have had waiting time claims. Plaintiff asserts that this is reasonable due to the significant barriers to recovery for those claims. *See* Motion at 32.

[8] At the hearing, the Court would like the parties to explain why the effective dates of the release provided in the Settlement cover May 31, 2014 through the date of the preliminary approval order, when the class period is only defined as covering September 28, 2016 through the date of the preliminary approval order. *See* Settlement ¶¶ 1.6, 7.2.

13

unfair or unreasonable. *See, e.g.*, *Rodriguez*, 563 F.3d at 958-69. The $5,000 requested for the named plaintiff is presumptively reasonable. *See Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016) ("Several courts in [the Northern District of California] have indicated that incentive payments of $10,000 or $25,000 are quite high and /or that, as a general matter, $5,000 is a reasonable amount.") (quoting *Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)).

In sum, the Court is inclined to find that the proposed settlement does not improperly provide preferential treatment to any class members.

### 4. Within Range of Possible Approval

The next factor asks the Court to examine whether the proposed settlement falls within the range of possible approval. "To determine whether a settlement 'falls within the range of possible approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Shuchardt v. Law Office of Rory W. Clark*, No. 15-CV-01329-JSC, 2016 WL 232435, at *10 (N.D. Cal. Jan. 20, 2016) (quoting *Tableware*, 484 F. Supp. 2d at 1080). Here, Plaintiff has highlighted several risks involved in continuing the course of litigation. *See* Motion at 21-24. For instance, there were disputed legal and factual issues regarding Plaintiff's rounding, wage statement, waiting time, and meal period times. *See id.* Defendant has argued that its rounding practice was facially fair and neutral, that Plaintiff did not suffer any injury from the alleged failure to provide proper wage statements, and that it had a policy and practice of paying all wages due upon termination, *inter alia*. *See id.* Further, Plaintiff acknowledges that he "has been unable to establish there were rest period violations, significant unpaid PTO, or overtime pay violations based on discovery and the records produced." *Id.* at 23.

The Settlement provides for a gross settlement amount of $875,000. *See id.* at 5. The net settlement amount consists of the gross settlement amount minus the following: (1) 33 1/3%, or $291,666.67, in attorneys' fees and up to $20,000 in litigation costs to class counsel; (2) 50,000 to settle PAGA claims, of which $37,500 will be allocated to the LWDA and the rest will be distributed in the net settlement amount; (3) settlement administration costs of up to $17,000; and (4) a requested service payment of up to $5,000 to Plaintiff. *Id.* The net settlement amount will therefore be approximately $503,833.33. *See id.*

Plaintiff has calculated the absolute total possible value of the claims as $13,719,548.

14

*See* Motion at 24. The gross settlement amount of $875,000 represents approximately 6.4% of the total maximum damages potentially available. Plaintiff asserts that this estimate is unrealistic given the significant defenses that Defendant could raise, particularly with regard to the wage statement and waiting time penalty claims. *See id.* at 24-25. Plaintiff estimates that his two strongest claims are for rounding, with a maximum potential recovery of $203,533, and for meal break violations, with a maximum potential recovery of $2,773,926. *See id.*

While the gross settlement amount is a small percentage of the total possible value of the claims, the Court is inclined to find that it is within the range of possible approval. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). Plaintiff has provided sufficient explanation of the risks of continued litigation and barriers to recovery regarding several of his claims. Taking these risks into account, the Court would find that the settlement amount is fair and reasonable. *See, e.g.*, *Thomas v. Cognizant Tech. Sols. U.S. Corp.*, No. SACV111123-JSTANX, 2013 WL 12371622, at *6 (C.D. Cal. June 24, 2013) (granting final approval in wage and hour action where settlement represented between 4.4% and 5% of the maximum estimated liability).

In sum, based on the foregoing factors and all considerations delineated in the recently amended Rule 23(e)(2), the proposed Settlement is sufficiently fair, adequate, and reasonable to merit preliminary approval. The Court would conclude that the "record support[s] the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." Fed. R. Civ. P. 23(e)(1), 2018 advisory committee notes.

### 5. PAGA Payment

The proposed Settlement includes a PAGA payment of $50,000. *See* Motion at 5. Of this amount, $37,500 is to be paid to the LWDA, and the remaining $12,500 will be contributed to the net settlement amount. *See id.* Plaintiff estimates the full PAGA penalties amount to be approximately $5.6 million. The PAGA payment therefore represents approximately 0.9% of the total estimated PAGA penalties and 5.7% of the gross settlement amount. While the PAGA payment is relatively low, the Court would find that it is reasonable here. Plaintiff avers that the PAGA penalty was negotiated in good faith and was the product of arms'-length negotiation by counsel well versed in the strengths and weaknesses of the PAGA claims. *See id.* at 28. Further,

courts have approved settlements allocating much lower percentages of overall settlement amounts to PAGA payments. *See, e.g.*, *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at *2-3 (E.D. Cal. Oct. 31, 2012) (approving allocation of $10,000, approximately 0.3%, out of $3.7 million settlement to PAGA); *Dawson v. Hitco Carbon Composites, Inc.*, No. CV167337PSGFFMX, 2019 WL 6138467, at *11 (C.D. Cal. July 9, 2019) (approving allocation of $10,000, approximately 0.7%, out of $1.1 million settlement to PAGA). The Court would find that the proposed PAGA payment is reasonable in the context of the settlement as a whole.

### C. Adequacy of Class Notice

Pursuant to Rule 23(e), district courts must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. *See* Rule 23(e)(1)(B). Regarding Rule 23(b)(3) classes, the following subsection provides:

> the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Rule 23(c)(2)(B) (reformatted for style herein). As such, the rule requires that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In addition, due process mandates that the "notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *See id.* at 174 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Class notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

In this case, the parties will hire a third-party administrator to administer the Settlement.[9] *See* Bui Decl. ¶ 4. Upon receipt of the names and contact information of all class members, the Settlement Administrator will perform a search using the National Change of Address Database to update the addresses as needed. *See* Settlement ¶ 8.2. The Settlement Administrator will mail the class notice and information sheets to class members by first class mail within 25 calendar days of the entry of the preliminary approval order. *Id.* ¶ 8.5. The class notice contains "information regarding the nature of the lawsuit; a summary of the substance of the settlement terms; the class definition and subclass definitions; the deadlines by which Class Members must submit Request for Exclusion or objection; the date for the final approval hearing; the formula used to calculate settlement payments; a statement that the Court has preliminarily approved the settlement; and a statement that Class Members will release the settled claims unless they opt out." Motion at 29. The Court would conclude that the proposed class notice is the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See* Rule 23(c)(2)(B). The Court also finds that the content of the proposed class notice satisfies the Rule 23(c)(2)(B) requirements.

## IV. Conclusion

Based on the foregoing discussion, the Court finds that Plaintiff has satisfied most of the requirements for preliminary class certification and class action approval. However, the Court cannot certify the class without adequate analysis of the predominance and superiority requirements. Therefore, the Court requests supplemental briefing from Plaintiff on that issue before the Court rules on Plaintiff's Motion. At the hearing, the Court would also like Plaintiff to explain why the Settlement provides for the claims release to begin on May 31, 2014, even though the class period does not begin until September 28, 2016.

---

[9] The parties have proposed to name Simpluris, Inc. as the third-party Settlement Administrator. *See* Motion at 33. Simpluris has extensive experience in administering class action settlements, having provided notification and/or claims administration services in over 5,000 cases, including over 3,000 labor and employment cases. *See* Bui Decl. ¶ 3. Plaintiff's counsel asserts that Simpluris's bid of $17,000 for settlement administration is competitive for similar wage-and-hour class settlement administration. *See* Bradley Decl. ¶ 48. As such, the Court would approve Simpluris as Settlement Administrator.