**BRADLEY/GROMBACHER LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
31365 Oak Crest Drive, Suite 240
Westlake Village, CA 91361-3089
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
kgrombacher@bradleygrombacher.com
mbradley@bradleygrombacher.com

Attorneys for Plaintiff, Jose Gonzalez

(*Additional Counsel Listed on Next Page*)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE GONZALEZ, an individual on his own behalf and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>CARDINAL HEALTH 200, L.L.C., a Delaware limited liability company, and DOES 1 through 20, inclusive,<br><br>        Defendants. | Case No. ED 5:18 CV 18-1574-GW (SPx)<br>Assigned to Hon. George H. Wu<br><br>**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:     September 3,2020<br>Time:    8:30 a.m.<br>Location: United States District Court<br>           Central District<br>           350 W. 1st Street<br>           9th Floor, Courtroom 9D<br>           Los Angeles, CA 90012<br><br>*[Filed Concurrently with Declarations of Marcus J. Bradley, Esq., Jose Gonzalez and Lindsay Kline and [Proposed] Order]* |

**LAW OFFICES OF SAHAG MAJARIAN II**
Sahag Majarian II, Esq. (SBN 146621)
18250 Ventura Boulevard
Tarzana, California 91356
Telephone:  (818) 609-0807
Facsimile:  (818) 609-0892
Email: sahagii@aol.com

# **TABLE OF CONTENTS**

I.      **INTRODUCTION** ........................................................................................ 2

II.     **FACTS AND PROCEDURE** ..................................................................... 3

     A.      **Facts Relevant to the Substantive Claims of the Litigation** ........... 4

         1.      Overview of Defendant's Business Operations.................................. 4

         2.      Plaintiff's Long Employment History with Defendant.................... 4

         3.      Procedural Background ..................................................................... 4

     B.      **The Litigation and Resolution of the Litigation**............................. 6

         1.      The Parties Completed Significant Discovery and Investigation .................. 6

         2.      Mediation and Settlement ................................................................. 6

         3.      Preliminary Approval of the Settlement........................................... 7

             a.      The Settlement Consideration and Distribution............................. 8

             b.      The Settlement Class and Class Period............................................ 8

             d.      The Class Release ............................................................................ 9

     C.      **The Notice Process** ........................................................................ 10

         1.      Notification to the Class.................................................................. 10

         2.      Requests for Exclusion, Objections and Disputes........................... 10

II.     **LEGAL STANDARDS** ......................................................................... 11

     A.      **Rule 23(e)** ......................................................................................... 11

III.     **DISCUSSION** ....................................................................................... 14

     A.      **Final Confirmation of Class Certification is Appropriate.** ........... 14

     B.      **Final Settlement Approval is Appropriate.** ..................................... 15

         1.      The Settlement is the Product of Arms' Length Negotiation...................... 15

         2.      The Costs and Risks of Further Litigation Favor Approval   of the Settlement ............................................................................... 16

         3.      The Amount of the Settlement Favors Approval ........................... 18

4.      The Settlement Provides for Equal Treatment of Class
        Members ................................................................................................ 20

5.      Reaction of Class Members ........................................................... 20

6.      Other 23(e) Factors ....................................................................... 21

IV.    CONCLUSION ................................................................................................ 21

Table of Contents

# <u>TABLE OF AUTHORITIES</u>

**Cases**          **Page(s)**

**<u>State Court Cases</u>**

*Lim v. Victoria's Secret Stores, Inc.*,
    Case No. 04CC00213 (Orange County Super. Ct.) ................................................................9

*Gomez v. Amadeus Salon, Inc.*,
    Case No. BC392297 (L.A. Super. Ct.) .....................................................................................9

**<u>Federal Court Cases</u>**

*Atlas v. Accredited Home Lenders Holding Co.*,
    No. 07-CV-00488-H (CAB), 2009 WL 3698393 (S.D. Cal. Nov. 4, 2009).............................21

*Balderas v. Massage Envy Franchising, LLC*,
    (N.D. Cal. July 21, 2014, No. 12-CV-06327 NC) 2014 WL 3610945 ...................................20

*Behrens v. Wometco Enters., Inc.*,
    (S.D. Fla. 1988) 118 F.R.D. 534 , aff'd, (11th Cir. 1990) 899 F.2d 21 ..................................19

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ............................................................................................2, 12

*City of Detroit v. Grinnell Corp.*,
    (S.D.N.Y. 1972) 356 F.Supp. 1380 ........................................................................................19

*Delgado v. New Albertson's, Inc.*,
    Case No. SACV08-806 DOC-RBNx (CD. Cal) .......................................................................9

*Harris v. Vector Mktg. Corp.*,
    No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .....................................16

*In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*,
    No. 09 MDL 2007-GW(PJWX), 2014 WL 12591624 (C.D. Cal. Jan. 10, 2014) ...................20

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ...........................................................................................12,16

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) .......................................................................15

*In re Toyota Motor Corp. Unintended Acceleration Mktg, Sales Practices & Prods. Liability Litig.*,
    10-ML-2151-JVS, 2013 U.S. Dist. LEXIS 123298 2013 WL 3878496 (CD. Cal. July 24, 2013) ........20

*In re Toys R US FACTA Litig.*,
  (C.D. Cal. 2014) 295 F.R.D. 438 ............................................................................19

*In re Zynga Inc. Secs. Litig.*,
  2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ..........................................................15

*International Union of Operating Engineers-Employers Canst. Industry Pension, Welfare and Training Trust Funds v. Karr*,
  994 F. 2d 1426 (9th Cir. 1993) ................................................................................10

*Ma v. Covidien Holding, Inc.*,
  (C.D. Cal. Jan. 31, 2014, No. SACV 12-02161-DOC) 2014 WL 360196 ..............19

*Martel v. Valderamma*,
  (C.D. Cal. 2015) 2015 U.S. Dist. LEXIS 49830 ......................................................19

*Nat'l Rural Telecommc'ns Coop. v. DirecTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................11

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ..................................................................................12

See *Rodriguez v. West Publish. Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..................................................................................15

*Sorenson v. PetSmart, Inc.*,
  Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) .......................................................9

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ..................................................................................11

*Velazquez v. Int'l Marine & Indus. Applicators, LLC*,
  No. 16CV494-MMA (NLS), 2018 WL 828199 (S.D. Cal. Feb. 9, 2018) ..................17

## **Statutes**

California Business and Professions Code § 17200 *et seq* ...........................................5

California Labor Code § 227.3 ...........................................................................................4

California Labor Code § 2698 *et seq* ...............................................................................5

Fair Labor Standards Act ("FLSA") .................................................................................5

Federal Rules of Civil Procedure 23(b)(3) ............................................................11,12, 14

Federal Rules of Civil Procedure 23(e)(2) .....................................................................12

Table of Authorities

**<u>Other Authorities</u>**

Newberg on Class Actions (5th ed. 2016) § 13:15 ........................................................ 19

Table of Authorities

**NOTICE OF MOTION AND MOTION FOR**

**<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

**PLEASE TAKE NOTICE THAT** on September 3, 2020 at 8:30 a.m. at the United States District Court for the Central District of California located at 350 W. 1st Street, Courtroom 9D, 9th Floor, Los Angeles, California, Plaintiff Jose Gonzalez, individually and on behalf of those similarly situated will, and hereby does, move this Court for an order granting final approval of the parties' class action settlement.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration of Marcus Bradley; (4) the Declaration of Jose Gonzalez; (6) the Declaration of Lindsay Kline of Simpluris; (6) the Parties' Stipulation and Agreement of Compromise and Class Settlement ("Settlement Agreement" or "Agreement"); (7) the Notice of Class Action Settlement; (8) the [Proposed] Order Granting Final Approval of Class Action Settlement; (9) the records, pleadings, and papers filed in this action; and (10) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Dated: August 13, 2020

**BRADLEY/GROMBACHER, LLP**
**LAW OFFICES OF SAHAG MAJARIAN, II**


By*: /s/ Marcus J. Bradley*

Marcus J. Bradley, Esq.
Kiley L. Grombacher, Esq.
Sahag Marjarian, II, Esq.

Attorneys for Plaintiff and the Settlement Class

1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT Case No. ED 5:18 CV 18-1574-GW (SPx)

## MEMORANDUM OF POINTS AND AUTHORITIES

Named Plaintiff Jose Gonzalez ("Plaintiff") respectfully submits this memorandum of points and authorities in support of the Motion for Final Approval of Settlement of the class action.

## I.     INTRODUCTION

In this class action lawsuit, Plaintiff requests that the Court grant final approval of the Parties'[1] class action and representative action settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. The non-reversionary settlement amount of $875,000 is "fair, reasonable, and adequate" within the meaning of Rule 23(e). The Class includes approximately 1,987 individuals, comprised of all persons, or each of them, currently or formerly employed by Defendant Cardinal Health 200, LLC ("Defendant") in the State of California and classified as hourly, non-exempt employees during the time frame of September 28, 2016 through May 26, 2020. Class Members stand to recover substantial and immediate monetary benefits under the settlement with an average estimated Gross Recovery of 237.08. Declaration of Lindsay Kline ("Kline Decl.") at ¶15.)

The settlement is in line with the strength of Class Members' claims given the risk, expense, complexity, and likely duration of further litigation, including the risks of establishing liability, proving damages at trial and on appeal, and the risks of securing and maintaining class action status throughout the trial and on appeal. See *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). It is uncertain whether Plaintiff would have ultimately been able to certify and maintain the case as a class action, and to have prevailed on liability for the Class

---

[1] All capitalized terms appearing in this memorandum that are not defined herein have the meanings assigned to them in the Stipulation of Settlement of Class Action and Release of Claims (Dkt. No. 31-1).

through summary judgment, at trial, and on appeal. Weighing the risks, time, and expense of continued litigation against the substantial benefits afforded now by the proposed $875,000 settlement, the proposed settlement is in the best interest of the Class.

The response of Class Members to the proposed settlement has been very favorable to date. The claims period has ended and only one Class Member has opted out of the Settlement. Kline Decl. at ¶ 11. Perhaps, even more important, not a single Class Member has objected to any terms of the settlement. Id. at ¶10. The lack of any objections and the fact that only one Class Member has opted out indicate that the Class has a favorable view of the settlement. This factor too weighs in favor of final settlement approval.

In connection with requesting final settlement approval, Plaintiff also requests that the Court: (1) confirm as final the certification of the Class under Fed. Rules Civ. P. 23(a) and 23(b)(3); (2) confirm as final the appointment of Plaintiff as the class representative of the Class; and (3) enter the proposed final approval order and enter judgment. Plaintiff also requests the Court award his requested attorney's fees and costs. Finally, while the settlement is not contingent upon any service payment, Plaintiff requests the Court award a service payment to compensate Plaintiff for his service to and risks taken on behalf of the Class[2].

## II.    FACTS AND PROCEDURE

Plaintiff asserts various claims on behalf of himself and other similarly situated employees of Defendant stemming from Defendant's alleged violation of the California Labor Code and FLSA.

///

///

---

[2] Plaintiff separately filed a Motion for Service Payment, Attorneys' Fees and Costs (Dkt. No. 42).

3

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT Case No. ED 5:18 CV 18-1574-GW (SPx)

### A.    Facts Relevant to the Substantive Claims of the Litigation

#### 1.    Overview of Defendant's Business Operations

Defendant, engages in the distribution of medical supplies throughout California. During the class period, Defendant has operated twelve medical supply distribution centers across the State.   Plaintiff and members of the class were employed in various non-exempt positions within Defendant's supply operations. The primary group of non-exempt employees are those in the position of warehouse operations associates, which is the position Plaintiff held.

#### 2.    Plaintiff's Long Employment History with Defendant

Plaintiff was employed with Defendant in its Ontario, California facility from approximately 1989 to June 2, 2017.   (Declaration of Jose Gonzalez ("Gonzalez Decl.") at ¶ 4.) From 2014 through June 2, 2017 Plaintiff was employed as a "Picker".   (Id.) Prior to that period, Plaintiff worked in a "Receiving" role.   (Id.) At all times, Plaintiff was classified by Cardinal as a non-exempt employee.  (Id. at ¶ 5.)

#### 3.    Procedural Background

On May 31, 2018, Plaintiff filed a putative class action Complaint against Defendant, in the Superior Court of the State of California, County of San Bernardino, assigned Case No. CIVDS1813181 (the "State Court Action").  On July 25, 2018, Defendant removed the State Court Action to the United States District Court for the Central District of California.  Thereafter, on November 11, 2018, Plaintiff filed the First Amended Complaint, which added the PAGA claim.  On January 24, 2020, Plaintiff filed a Second Amended Complaint ("SAC").

The SAC asserts numerous wage and hour claims against Defendant, brought on behalf of Plaintiff and on behalf of a putative class and collective and aggrieved employees.  Plaintiff alleges that Defendant: (1) failed to pay all wages; (2) failed to pay overtime compensation; (3) failed to pay paid time off in violation of California Labor Code § 227.3; (4) failed to pay wages at the time of termination;

4

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT Case No. ED 5:18 CV 18-1574-GW (SPx)

(5) failed to provide proper wage statements; (6) violated the Unfair Competition Law pursuant to the California Business and Professions Code § 17200 *et seq.*; (7) failed to pay all wages and overtime compensation in violation of the Fair Labor Standards Act ("FLSA"); (8) violated the California Labor Code § 2698 *et seq.* ("PAGA"); (9) failed to provide meal periods; and (10) failed to provide rest periods.

Plaintiff's claims were brought on behalf of himself and a putative class of:

> All employees who were or are employed by Defendants during the Class Period (The Class Period is the period from May 31, 2014, through and including the date judgment is rendered in this matter) in California as "non-exempt employees." As used in this class definition, the term "non-exempt employee" refers to those who Defendants have classified as non-exempt from the overtime wage provisions of the California Labor Code.

Plaintiff also alleged claims on behalf of a subclass of terminated employees:

> All members of the Plaintiff Class whose employment ended during the Class Period (The Class Period is the period from May 31, 2014, through and including the date judgment is rendered in this matter).

Plaintiff's claims are based on the following alleged underlying behavior, which is common to all members of the class (and/or subclass):

> i. Defendant's common practice of rounding its nonexempt employees' start and stop time entries while prohibiting employees from clocking in more than three minutes before their shift;
>
> ii. Defendant's common practice of failing to provide wage statements reflecting the hourly rate for double-time pay.;

5

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT Case No. ED 5:18 CV 18-1574-GW (SPx)

      iii. Defendant's common practice of failing to pay all wages owed at the time of termination;

      iv. Defendant's common practice of failing to provide or permit its employees to take meal breaks including failing to have any policy permitting second meal breaks;

      v. In addition, Plaintiff asserted claims based on an alleged failure to pay overtime for all time worked, failure to pay vacation time upon termination, failure to provide or permit employees to take rest breaks.  Counsel's analysis of the records provided by Defendant reveal that there is not a basis for recovery on these claims and counsel assigned de minimis value to these claims.

## B.    The Litigation and Resolution of the Litigation

### 1.    The Parties Completed Significant Discovery and Investigation

The Parties engaged in substantial discovery and analysis of the underlying merits of Plaintiff's claims and potential damages.   Defendant responded to requests for production and interrogatories served by Plaintiff and produced, *inter alia*, Plaintiff's personnel records including his wage statements and time records; Defendant's employment policies and procedures concerning the recording of time, overtime, attendance, meal and rest periods, and payment of wages; and a summary of electronic data regarding Class Member meal periods and time punch data.  (Bradley Decl. ¶ 7).

In this regard, Defendant produced a 25% sample of class data and Plaintiff's counsel conducted an analysis of these records including engaging an expert to analyze the records and calculate damages for use in mediation. (Bradley Decl. ¶ 8).

### 2.    Mediation and Settlement

On May 5, 2019, the parties engaged in mediation with attorney Michael E.

6

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT Case No. ED 5:18 CV 18-1574-GW (SPx)

Dickstein, a highly experienced mediator with a substantial background in resolving employment cases. (Bradley Decl. ¶ 10). Although the parties were not able to reach a resolution during the mediation, they continued to negotiate with the input of Mr. Dickstein and fully executed the Settlement Agreement on November 3, 2019. (Bradley Decl. ¶ 11).

### 3. Preliminary Approval of the Settlement

On May 26, 2020, following supplemental briefing, the Court granted Plaintiff's Motion for Preliminary Approval. (ECF Dkt. No. 41.) Therein, the Court determined that, "for settlement purposes only, the requirements of Federal Rule of Civil Procedure 23(a) and (b) are satisfied." (Id. at p. 2.) Based thereon, the Court conditionally certified the following Settlement Class:

> Plaintiff and all persons, or each of them, currently or formerly employed by Defendant in the State of California and classified as hourly, non-exempt employees during the time frame of September 28, 2016 through the date the Court signs this Order (date of preliminary approval of the Settlement Agreement).

The Court further determined,

> [i] It appears to the Court on a preliminary basis that the Settlement is fair, adequate and reasonable. Indeed, the Court recognizes the significant value of the monetary recovery provided to Class Members and finds that such recovery is fair, adequate and reasonable when balanced against further litigation related to liability and damages issues[3].

---

[3] Order at 2.

### 2.    Summary of Settlement Terms

#### a.    The Settlement Consideration and Distribution

Plaintiff and Defendant agreed to settle all claims alleged or that could have been alleged in exchange for a payment in the total amount of $875,000.  (SA ¶ 1.2)  The Gross Settlement Amount is to be distributed for the following purposes: (1) settlement payments to Participating Class Members; (2) a requested thirty-three and a third (33 1/3%) percent of the Gross Settlement Amount or $291,666.67 in attorneys' fees and up to $20,000 in litigation costs/expenses to Class Counsel (SA ¶ 5.1); (3) $50,000 allocated to settle PAGA claims of which a $37,500 payment will be made to the LWDA to account for the LWDA's portion of the PAGA settlement and the rest will be distributed in the net settlement amount (SA ¶ 5.4); (4) Settlement Administration Costs of up to $17,000 (SA ¶ 5.2); and (5) a requested Service Payment of up to $5,000 to Plaintiff (SA ¶ 5.3).

Based on the above, the minimum Net Settlement Amount is estimated to be $503,833.33, which is subject to increase if any of the amounts estimated for attorneys' fees and costs, service award, LWDA payment or settlement administration expenses prove to be less than the amount estimated.

Subject to the Court approving Attorneys' Fees and Costs, the payment to the LWDA, Settlement Administration Costs, and the Plaintiff's Service Payment, the Net Settlement Amount will be distributed to all Participating Class Members. **<u>Because the Gross Settlement Amount is non-reversionary, 100% of the Net Settlement Amount will be paid to Participating Class Members, and without the need to a submit claim for payment.</u>**  (SA ¶¶ 4.6, 8.12).

#### b.    The Settlement Class and Class Period

The Settlement contemplates a class certified for settlement purposes comprising "Plaintiff and all persons, or each of them, currently or formerly employed by Defendant in the State of California and classified as hourly, non-exempt employees during the time frame of September 28, 2016 through the date

8

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT Case No. ED 5:18 CV 18-1574-GW (SPx)

the Court grants preliminary approval of th[e] Settlement Agreement."  (SA ¶ 1.2)

The Class Period runs from September 28, 2016 through the date of preliminary approval (as opposed to four years back from the filing of the Complaint) because the beginning date of the period is constrained by a class settlement in an earlier action which released the claims asserted through September 27, 2016.  (SA ¶ 2.2).

### c.    The Settlement Distribution Formula

The Net Settlement Amount shall be apportioned among Settlement Class Members based on the Settlement Class Member's qualification as a member of the Class.  The Net Settlement amount will be distributed to each Class Member based on the number of workweeks worked during the Class Period.  (SA ¶ 4.2).

Based on the estimated $503,833.33 Net Settlement Amount and the 1,0987 Class Members, Plaintiff estimates that the average net recovery (prior to taxes) will be $237.08. Kline Decl. at ¶15.   This recovery on behalf of the Class Members is well in excess of amounts that have been approved on the low end of the range of wage and hour settlements in California state and federal courts.[4]

### d.    The Class Release

In exchange for the Gross Settlement Amount, Plaintiff and Class Members who do not opt out will agree to release all claims alleged or that could have been alleged based on the facts alleged in the SAC. (SA ¶¶ 4.8, 7.1.).  The releases in this case are directly related to Plaintiff's claims and are therefore appropriate. *See International Union of Operating Engineers-Employers Canst. Industry Pension, Welfare and Training Trust Funds v. Karr*, 994 F. 2d 1426, 1430 (9th

---

[4] *See, e.g.*, *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20); *Delgado v. New Albertson's, Inc.*, Case No. SACV08-806 DOC-RBNx (CD. Cal.) (average net recovery of approximately $45.)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT Case No. ED 5:18 CV 18-1574-GW (SPx)

Cir. 1993) ("res judicata bars not only all claims that were actually litigated, but also all claims that 'could have been asserted' in the prior action").

### C. The Notice Process

#### 1. Notification to the Class

On June 9, 2020, Counsel for Defendant provided Simpluris with a mailing list containing the last-known full names, mailing addresses and telephone numbers, Social Security numbers, and number of Workweeks for individual identified as Class Members ("Class Data"). (Kline Decl at ¶6.)

The mailing addresses contained in the Class Data were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. (Id. at ¶7.) On June 19, 2020, Class Notices were mailed to all one thousand nine hundred eighty-seven (1,987) Class Members with addresses contained in the Class Data via First Class Mail or updated addresses located via the NCOA search. (Id. at ¶8.)

Simpluris performed advanced searches on any returned mail. Ultimately, only thirteen Notices remain undeliverable amounting to well less than 1% of the total class population.

Additionally, a toll-free telephone number was included in the Class Notice for the purpose of allowing the Class Members to call Simpluris and to make inquiries regarding the Settlement. (Kline Decl. at ¶4.) Beginning on June 19, 2020, the system has been accessible 24 hours a day, 7 days a week, and will remain in operation throughout the settlement process. (Id.) Callers have the option to speak with a live call center representative (in either English or Spanish) during normal business hours or to leave a message and receive a return call during non-business hours. (Id.)

#### 2. Requests for Exclusion, Objections and Disputes.

The Claim Period ended on August 3, 2020. At the termination of the period, there was one request for exclusion received. (Kline Decl. at ¶ 10) There

were no objections to the settlement.  (Id. at ¶ 11.) No class members have submitted workweek disputes.  (Id. at ¶12.)

## II.    LEGAL STANDARDS

### A.    Rule 23(e)

Under Rule 23(e) of the Federal Rules of Civil Procedure, "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." *Fed. R. Civ. P. 23(e)*. The requirements of Rule 23(e) set forth the procedures for approval of class action settlements. First, the court must direct notice in a reasonable manner to all Class Members who would be bound by the settlement. *Fed. R. Civ. P. 23(e)(1)*. Class Members should be given the opportunity to opt-out of the settlement and to object to the settlement. *Fed. R. Civ. P. 23(e)(4)-(5)*. A court may only approve a binding settlement after a hearing and on finding that the settlement is fair, reasonable, and adequate. *Fed. R. Civ. P. 23(e)(2)*.

A court must engage in a two-step process to approve a proposed class action settlement. First, the court must determine whether the proposed settlement deserves preliminary approval. *Nat'l Rural Telecommc'ns Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). This step has already been completed here, as the Court preliminarily approved the settlement on May 26, 2020. See Order Preliminarily Approving Settlement and Providing for Notice, Docket No. 41. Second, after notice is given to Class Members, a court must determine whether final approval is warranted. *Nat'l Rural Telecommc'ns Coop.*, 221 F.R.D. at 525.

To grant final approval, the court must find that the proposed settlement is fair, adequate, and reasonable. See *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). In making this determination, the court may consider any or all of the following factors:

(1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the Class Members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Hanlon*, 150 F.3d at 1026. This list is not exhaustive, and "[t]he relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. At least where settlement is reached prior to formal class certification, courts also look for signs of collusion or other conflicts of interest. See *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

Under recent amendments to the Federal Rules of Civil Procedure, district courts must now consider a list of factors delineated in Rule 23(e)(2), which are somewhat similar to the Ninth Circuit's longstanding factors and considerations:

(2) Approval of the Proposal. If the proposal would bind Class Members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

1

2          (B) the proposal was negotiated at arm's length;

3          (C) the relief provided for the class is adequate,

4    taking into account:

5              (i)  the costs, risks, and delay of trial and appeal;

6              (ii)  the effectiveness of any proposed method of

7    distributing relief to the class, including the method of processing

8    class-member claims;

9              (iii)  the terms of any proposed award of

10   attorney's fees, including timing of payment; and

11             (iv) any agreement required to be identified under

12   Rule 23(e)(3); and

13         (D) the proposal treats Class Members equitably

14   relative to each other[5].

15

16         Regarding these recent amendments, the Advisory Committee

17   recognizes that federal "[c]ourts have generated lists of factors" to decide the

18   fairness, reasonableness, and adequacy of a settlement, and that "each circuit has

19   developed its own vocabulary for expressing these concerns."  Fed. R. Civ. P.

20   23(e)(2) Advisory Committee's Note to 2018 amendment. Recognizing that, the

21   Advisory Committee explained that it did not intend to "displace any factor [used

22   by federal courts], but rather to focus the court and the lawyers on the core

23   concerns of procedure and substance that should guide the decision whether to

24   approve the proposal." *Id*. As such, to the extent possible the Court would apply

25   the factors listed in Rule 23(e)(2) through the lens of the Ninth Circuit's factors

26   _____

27   [5] Fed. R. Civ. P. 23(e)(2).

28

and existing relevant precedent. The Court would also take heed of the Advisory Committee's warning not to let "[t]he sheer number of factors ... distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

Despite the importance of fairness, the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class actions. See, e.g., *Officers for Justice*, 688 F.2d at 625 ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation"). While balancing all of these interests, the court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.* "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. "Settlement is the offspring of compromise; the question ... is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027.

## III. DISCUSSION

### A. Final Confirmation of Class Certification is Appropriate.

The Order Granting Motion for Preliminary Approval certified the Class for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure, appointed Plaintiff as the representative for the Class and appointed Plaintiff's attorneys as Class Counsel. Dkt. No. 41. The Court found, for purposes of settlement, that the Class meets all of the requirement for maintenance of a class action under Rule 23(a) and Rule 23(b)(3) (ibid.).

Notice of the class action was directed to all Class Members in a form and manner that complied with Rule 23 (see supra § II.D.1). As noted above, Class Counsel are not aware of any objections by a Class Member to any aspect of the

14

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT Case No. ED 5:18 CV 18-1574-GW (SPx)

proposed settlement and only one of the approximately 1,987 Class Members opted out. As noted above, the deadline for opting out of or objecting to the settlement has now passed.

For these reasons, and for the reasons set forth in Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 31), the Court should confirm the certification of this action as a settlement class action and the appointment of Plaintiff as the Class Representative.

**B.    Final Settlement Approval is Appropriate.**

**1.    The Settlement is the Product of Arms' Length Negotiation**

In this case, as discussed more extensively in Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 31, p.17; Dkt. No. 31-1, ¶¶ 33-42) and in Plaintiff's Motion for Attorney's Fees (Dkt. No. 42): (1) Class Counsel are highly experienced in class action wage and hour litigation[6]; (2) Plaintiff (and Defendant) conducted extensive discovery, investigation, and motion practice that allowed Class Counsel to act intelligently in negotiating and recommending the settlement; and, (3) the Parties arrived at the settlement through arms-length bargaining involving competent and experienced counsel and only after a fully day of mediation with an experienced mediator. See *Rodriguez v. West Publish. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested.") (citations omitted); *In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (holding that the parties' use of mediator and the fact that significant discovery had been conducted "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement"); *Harris v.*

---

[6] See *In re Heritage Bond Litig.,* 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.") (quotation omitted).

*Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (noting that the parties' use of a mediator "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel.").

Finally, none of the "subtle signs of collusion" that the Ninth Circuit has warned of are present here. See e.g. *In re Bluetooth*, 654 F.3d at 947. Settlement Class Members will be receiving monetary distribution commensurate with their *pro rata* share of the Settlement Fund. Further, Class Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 33 1/3% of the Settlement Fund to compensate them for the services they have rendered on behalf of the Settlement Class. See generally Fees Motion. The award of attorneys' fees is separate from the approval of the Settlement, and neither Plaintiff nor Class Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. See Settlement ¶ 5.1. Moreover, there is no indication of a "clear sailing" arrangement or an arrangement for unawarded fees to revert to Defendants rather than the class members. The Settlement is not a claims-made settlement. It is an all-in, non-reversionary settlement. Upon the occurrence of the Effective Date, no Defendant, Releasee, or any other person or entity who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.

As such, this factor weighs in favor of final approval.

## 2.    The Costs and Risks of Further Litigation Favor Approval   of the Settlement

The Court must "balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiffs' case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." *Velazquez v. Int'l Marine & Indus. Applicators, LLC*, No. 16CV494-MMA

(NLS), 2018 WL 828199, at *4 (S.D. Cal. Feb. 9, 2018).

Plaintiff is convinced of the strengths of his claims. However, Defendant is equally adamant about the strength of its defenses. Plaintiff's claims and Defendant's defenses give rise to a number of critical, disputed factual and legal issues that go to the core of Plaintiffs' claims and theories of liability and, by extension, to Plaintiff's entitlement to recover damages and penalties, and/or the proper measure of damages.

As is set forth in greater detail in Plaintiff's Motion for Preliminary Approval and the supplemental briefing Plaintiff filed in support thereof, Dkt. No. 31; Dkt 35, while this is a strong case for class certification and for maintaining class status through trial, there is substantial risk that Plaintiff and the Class could lose on the merits.

At the very least, litigating these issues would require costly, complicated discovery, summary judgment practice, and, in all likelihood, trial; whether Plaintiff would prevail remains uncertain; and appeals would almost certainly follow any ruling by this Court. By contrast, the Settlement provides excellent recoveries to class members now without that uncertainty and delay. The risks and uncertainties facing the claims of Plaintiff and the Class weigh in favor of settlement approval.

Whatever the strength of their claims, Plaintiff nonetheless faced numerous obstacles to recovery, including likely challenges to the use of representative testimony and expert witnesses to establish class-wide liability and aggregate damages, challenges to Plaintiff's methodology for calculating damages and penalties, and having to defeat Defendant's defenses.

Further, despite the suitability of this matter for class treatment, the litigation regarding class certification would also have been expensive and time-consuming. Assuming the Court certified a class action for trial, Defendant could have appealed from a class certification order, which might have delayed the

proceedings considerably and been very expensive.

Additionally, if this case had proceeded to trial, the time and expenses associated with trial preparation would have been considerable. The parties would have had to prepare expert reports and conduct expert discovery, prepare and defend against motions in limine, draft trial briefs, prepare deposition designations and trial exhibits, and, ultimately, try the case. A class action trial in this case would be manageable, but it would also be complex, expensive, and extremely time-consuming. Even if Plaintiff obtained a favorable verdict and judgment on their claims, Plaintiff and the Class would face additional expenses and delay if, as is likely, Defendant was to appeal.

Taken together, these considerations support approval of the settlement.

### 3.    The Amount of the Settlement Favors Approval

The Court must weigh the risk to Plaintiff against the value of the Settlement. *Officers for Justice*, 688 F.2d at 625.  The Settlement provides for a $875,000 Settlement Fund plus any accrued interest and minus: (i) any Notice and Administration Costs; (ii) any Litigation Expenses awarded by the Court; and (iii) any attorneys' fees awarded by the Court; and (iv) payment to the LWDA for settlement of the PAGA claims. See Settlement ¶¶ 1.2, 5.1, 5.3, 5.4.) Class Counsel request attorney's fees of 33 1/3 % of the Settlement Fund, or $291,666.67. See Fees Motion. Class Counsel also seek reimbursement of $14,805.37 in litigation expenses incurred by Class Counsel. See Id. Plaintiff's damages expert estimated Plaintiff's best-case scenario for the total maximum damages as $13.7 million. See Bradley Decl. ¶¶12. The estimate assumes that Plaintiff would fully prevail on each of his claims at both summary judgment and after a jury trial, that the Court would certify the same class period as the Settlement Class Period, that the Court and jury would accept Plaintiff's damages theory and that maximum PAGA penalties would be assessed without reduction

due to the exercise of the Court's discretion[7]. See id. Thus, the Settlement Amount represents approximately 6.4% of the total maximum damages potentially available.

Courts have determined that class settlements, like the one reached here, are, of course, reasonable even where Plaintiff recovers only a portion of their total potential recovery. (See e.g. *Behrens v. Wometco Enters., Inc.* (S.D. Fla. 1988) 118 F.R.D. 534, 542, aff'd, (11th Cir. 1990) 899 F.2d 21 "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate."]) Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even - a thousandth of a single percent of the potential recovery." (*Id.*; see also *City of Detroit v. Grinnell Corp.* (S.D.N.Y. 1972) 356 F.Supp. 1380, 1386 [a recovery of 3.2% to 3.7% of the amount sought is "well within the ball park"], aff'd in part, rev'd on other grounds, (2d Cir. 1974) 495 F.2d 448; *Martel v. Valderamma* (C.D. Cal. 2015) 2015 U.S. Dist. LEXIS 49830 * 17 [approving a settlement of $75,000 when potential damages were $1.2 million]; *In re Toys R US FACTA Litig.* (C.D. Cal. 2014) 295 F.R.D. 438, 453 [approving settlement with vouchers (not cash) potentially worth a maximum of three percent (3%) if all possible claims were actually made, or $391.5 million aggregate voucher potential where the class could have recovered $13.05 billion.]) See 4 William B. Rubenstein et al., Newberg on Class Actions (5th ed. 2016) § 13:15 (the range of reasonableness percentage could be as low as 1/100th or 1/1000th of 1%); *Ma v. Covidien Holding, Inc.*, (C.D. Cal. Jan. 31, 2014, No. SACV 12-02161-DOC) 2014 WL 360196, at *5  (finding a settlement worth 9.1% of the total value of the action "within the range of reasonableness"); *Balderas v. Massage Envy Franchising, LLC*, (N.D. Cal. July 21, 2014, No. 12-

---

[7] The model also assumes that PAGA penalties can be stacked and that Plaintiff could recover for all claims alleged, although some courts have been declining to so hold, finding the assessment of penalties for certain derivative claims to amount to a "double recovery."

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT Case No. ED 5:18 CV 18-1574-GW (SPx)

CV-06327 NC) 2014 WL 3610945, at *5  (granting preliminary approval of a net settlement amount representing 5% of the projected maximum recovery at trial).

This factor cuts in favor of final approval.

### 4.    The Settlement Provides for Equal Treatment of Class Members

The settlement proposed by the Parties reflects no significant indication of preferential treatment. As described in the Proposed Notice:

> The Class Fund will be divided by the number of Participating Class Members to determine each Participating Class Member's share of the Class Fund.  The number of pay periods in which each Class Member was employed by Defendant from September 28, 2016 through May 26, 2020 ("Qualified Pay Periods") will be aggregated to determine the Total Qualified Pay Periods.  A Class Member's pro-rata share of the Net Settlement Amount will be calculated according to the following formula: Class Member's Qualified Pay Period(s) ÷ Total Qualified Pay Periods = Class Member's pro-rata share[8].

### 5.    Reaction of Class Members

There have been no objections by class members to the Settlement or the Plan of Allocation. See Kline Decl. ¶¶10, 11. "[T]he absence of any objections to the Settlement Agreement among Class Members supports final approval." *In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*, No. 09 MDL 2007-GW(PJWX), 2014 WL 12591624, at *3 (C.D. Cal. Jan. 10, 2014); see also *In re Toyota Motor Corp. Unintended Acceleration Mktg, Sales Practices & Prods. Liability Litig.*, 10-ML-2151-JVS, 2013 U.S. Dist. LEXIS 123298, at *263-64, 2013 WL 3878496 (CD. Cal. July 24, 2013) ("The absence of a large number of objections to a

---

[8] Notice at p. 2 ¶7.

proposed class settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Atlas v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB), 2009 WL 3698393, at *4 (S.D. Cal. Nov. 4, 2009) (recognizing that only two class members submitted objections to the plan of allocation in deciding to approve the plan of allocation). This Court should similarly find that the lack of objections from class members weighs in favor of granting final approval.

### 6.    Other 23(e) Factors

Other 23(e) factors also support final approval. The method proposed by the parties for processing Settlement Class Members' claims is typical for wage and hour class actions.

As discussed in the Fee Motion, the proposed attorney's fees of 33 1/3 % of the Settlement Fund to be reasonable in light of the risk involved in this litigation, the work performed by Class Counsel, and the fact that there were no objections to this amount. Moreover, approval of the requested attorney's fees is separate from approval of the Settlement, and the Settlement may not be terminated based on a ruling regarding attorney's fees. See Settlement ¶ 5.1.

## IV.    CONCLUSION

The Parties have negotiated a fair and reasonable settlement of claims. Having appropriately presented the materials and information necessary for final approval, the Parties request that the Court grant final approval of the settlement.

Dated: August 13, 2020          **BRADLEY/GROMBACHER, LLP**
                                **LAW OFFICES OF SAHAG MAJARIAN, II**

                                By: */s/ Marcus J. Bradley*
                                Marcus J. Bradley, Esq.
                                Kiley L. Grombacher, Esq.
                                Sahag Marjarian, II, Esq.

                                Attorneys for Plaintiff and the
                                Settlement Class