**BRADLEY/GROMBACHER LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
31365 Oak Crest Drive, Suite 240
Westlake Village, CA 91361-3089
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
kgrombacher@bradleygrombacher.com
mbradley@bradleygrombacher.com

Attorneys for Plaintiff
(*Additional Counsel Listed on Next Page*)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE GONZALEZ, an individual on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CARDINAL HEALTH 200, L.L.C., a Delaware limited liability company, and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. ED 5:18 CV 18-1574-GW (SPx)<br>Assigned to Hon. George H. Wu<br><br>**NOTICE OF MOTION AND MOTION FOR SERVICE AWARD, ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        September 3, 2020<br>Time:        8:30 a.m.<br>Location:  United States District Court<br>               Central District<br>               350 W. 1st Street<br>               9th Floor, Courtroom 9D<br>               Los Angeles, CA 90012<br><br>***[Filed Concurrently with Declaration of Marcus J. Bradley, Esq. and [Proposed] Order]*** |

1

**LAW OFFICES OF SAHAG MAJARIAN II**
Sahag Majarian II, Esq. (SBN 146621)
18250 Ventura Boulevard
Tarzana, California 91356
Telephone:   (818) 609-0807
Facsimile:  (818) 609-0892
Email: sahagii@aol.com

Attorneys for Plaintiff, Jose Gonzalez

2

# **TABLE OF CONTENTS**

I.      **INTRODUCTION**..............................................................................................3

II.    **FACTS AND PROCEDURE** ...........................................................................5

      A.    Class Counsel Devoted Significant Time and Resources to....................5
            Litigating this Case on A Contingency Basis, Despite the Risks ..........5
            Involved. ..............................................................................................5

      B.    Plaintiff Devoted Time and Resources to the Litigation .......................7

      C.    Plaintiff and the Class Obtained a Highly Beneficial Settlement for
            Class Members..........................................................................................7

III.   **ARGUMENT**....................................................................................................11

      A.    The Attorneys' Fees Sought Are Reasonable Under Either the
            Percentage-of-the-Fund Method or the Lodestar Method. ..................11

      B.    Class Counsel Are Entitled to an Award of Attorneys' Fees Because
            the Litigation Recovered a Certain and Calculable Fund for the
            Plaintiff Classes. ................................................................................11

      C.    The Requested Fee Is Reasonable Under the Percentage-of-the-Fund
            Method. ................................................................................................12

      D.    The Requested Fee is Reasonable Under the Lodestar Cross-Check. ................13

           1.    Class Counsel's Lodestar Exceeds the Fee Amount Requested,
                and Is Based on Reasonable Hours and Rates.............................13

            2.    The Legal Principles Behind Risk Multipliers Further Support
                the Reasonableness of the Fee Requested. ..................................15

      E.    Class Counsel are Entitled to Recover Their Reasonable Litigation
            Costs....................................................................................................16

      F.    The Court Should Approve the Requested Service Award in
            Recognition of Plaintiff's time and Effort and the Risk He Undertook
            in Service to the Class........................................................................17

           1.    By Initiating This Action and Devoting Substantial Time to
                Assist with the Successful Prosecution and Settlement of the
                Act, Plaintiff Benefited the Class as a Whole..............................18

           2.    The Risks Plaintiff Took Support his Request for a Service
                Award ..........................................................................................20

           3.    The Reasonableness of Plaintiff's Request Favors Granting a
               Service Award ............................................................................21

i

4.      Plaintiff should be Awarded a Service Payment to Encourage
        Private Attorneys General to Enforce Important Remedial
        Statutes.............................................................................................. 23

5.      Class Members Had Notice and an Opportunity to Object to
        Plaintiff's Request for a Service Award, Attorneys' Fees and
        Costs. To Date, No Class Member Has Objected to the Fees or
        Costs Requested................................................................................. 25

**IV.    CONCLUSION ..........................................................................................25**

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                     **Page(s)**

*Alberto v. GMRI, Inc.*,
    252 F.R.D. 652 (E.D. Cal. 2008) ................................................................21

*Barbosa v. Cargill Meat Solutions Corp.*,
    1:11-CV-00275-SKO, 2013 WL 3340939 (E.D. Cal. July 2, 2013) ...........13

*Barrera v. Home Depot U.S.A., Inc.*,
    No. 12-CV-05199-LHK, 2015 WL 2437897 (N.D. Cal. May 20, 2015) .............24

*Blum v. Stenson*,
    465 U.S. 886 (1984).................................................................................12

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980).................................................................................11

*Bower v. Cycle Gear, Inc.*,
    No. 14-CV-02712-HSG, 2016 WL 4439875 (N.D. Cal. Aug. 23, 2016)............12

*Brazil v. Dell Inc.*,
    No. C-07-01700, 2012 WL 1144303 (N.D. Cal. Apr. 4, 2012)................20

*Cabiness v. Educ. Fin. Sols., LLC*,
    No. 16-CV-01109-JST, 2018 WL 3108991 (N.D. Cal. June 25, 2018) .................21

*Carlson v. C.H. Robinson Worldwide, Inc.*,
    No. 02-CV-3780, 2006 WL 2671105 (D. Minn. Sept. 18, 2006)..........................22

*Ching v. Siemens Industry, Inc.*,
    C11-4838 MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) .............12

*Connolly v. Weight Watchers N. Am. Inc.*,
    14-CV-01983, 2014 WL 3611143 (N.D. Cal. July 21, 2014) ...............20

*Corbin v. Time Warner*,
    821 F.3d 1069 (9th Cir. 2016) .................................................................8

*Craft v. Cnty. of San Bernardino*,
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) .................................................16

*Dent v. ITC Serv. Grp., Inc.*,
    No. 12-CV-0009, 2013 WL 5437331 (D. Nev. Sept. 27, 2013)............................22

*Destefano v. Zynga, Inc.*,
    No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016). ..................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*DreamWorks Animation SKG Inc.*,
   No. 14-CV-04062-LHK, 2017 WL 2423161 (N.D. Cal. June 5, 2017) ................................20

*Elliott v. Rolling Frito-Lay Sales LP*,
   2014 WL 2761316 (C.D. Cal. June 12, 2014) ........................................................12

*Estrella v. Freedom Fin. Network, LLC*,
   C09-03156 SI, 2012 WL 4645012 (N.D. Cal. Oct. 1, 2012) ..................................13

*Garner v. State Farm Mut. Auto Ins*.,
   No. 08-CV-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ..............................17

*Glass v. UBS Fin. Servs., Inc*.,
   No. C-06-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ..................................23

*Graham v. Overland Solutions, Inc*.,
   No. 10-CV-0672 BEN, 2012 WL 4009547 (S.D. Cal. Sept. 12, 2012) ......................22

*Guippone v. BH S&B Holdings, LLC*.,
   No. 09-CV-01029, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ............................20

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ..............................................................................16

*Hester v. Vision Airlines, Inc*.,
   2014 WL 3547643 (D. Nev. July 17, 2014) ..........................................................12

*Holak v. K Mart Corp.*,
   2014 U.S. Dist. LEXIS 139879 (E.D. Cal. Sept. 30, 2014) ....................................8

*In re Anthem, Inc. Data Breach Litig*.,
   No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ....................4

*In re Bluetooth Headset Prods. Liab. Litig*.,
   654 F.3d 935 (9th Cir. 2011) ..............................................................................3

*In re Heritage Bond Litig.,*
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ......................13

*In re High-Tech Employee Antitrust Litig*.,
   No. 11-CV-02509- LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ..................20

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig*.,
   No. 4:14-MD-2541- CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ..................22

*In re Online DVD-Rental Antitrust Litig.,*
   779 F.3d 934 (9th Cir. 2015) ..........................................................................12, 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Pac. Enterprises Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...................................................................................4

*In re Smithkline Beckman Corp. Sec. Litig.*,
    751 F. Supp. 525 (E.D. Pa. 1990) ......................................................................23

*Lusby v. GameStop Inc.*,
    No. C12-03783 HRL, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ...................4

*Milligan v. Am. Airlines, Inc.*,
    577 Fed. Appx. 718 (9th Cir. 2014) .....................................................................8

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ............................................................................................15

*Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*,
    No. CV 07- 3072 AHM, 2009 WL 9100391 (C.D. Cal. June 24, 2009) .............13

*Nat'l Rural Telecommunications Coop.*,
    221 F.R.D. ..............................................................................................................8

*Neary v. Regents of University of California*,
    3 Cal. 4th 273 (1992) ..........................................................................................10

*In Re Omnivision Technologies, Inc.*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................................16

*Perkins v. Linkedin Corp.*,
    No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ...............16

*Prison Legal News v. Schwarzenegger*,
    608 F.3d 446 (9th Cir. 2010) ...............................................................................15

*Ridgeway v. Wal-Mart Stores Inc.*,
    269 F. Supp. 3d 975 (N.D. Cal. 2017) .................................................................22

*Ridgeway v. Wal-Mart Stores, Inc.*,
    2014 U.S. Dist. LEXIS 126806 (N.D. Cal. Sept. 10, 2014) ..................................8

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................................................3

*Ross v. U.S. Bank Nat. Ass'n*,
    No. 07-02951, 2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) ............................20

*Sauby v. City of Fargo*,
    No. 07-CV-10, 2009 WL 2168942 (D. N. Dakota, Jul. 16, 2009) .......................24

iii

*See's Candy Shops, Inc. v. Superior Court*,
   210 Cal.App. 4th 889 (2012) ................................................................8

*Singer v. Becton Dickinson & Co*.,
   2010 WL 2196104 (S.D. Cal. June 1, 2010).......................................13

*Singletary v. Teavana Corp.*,
   2014 WL 1760884 (N.D. Cal. Apr. 2, 2014) .........................................9

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) .........................................................3,12

*State of Fla. v. Dunne*,
   915 F.2d 542 (9th Cir. 1990) ...............................................................12

*Staton v. Boeing Co*.,
   327 F.3d 938 (9th Cir. 2003) ..........................................................11,18

*Stuart v. Radioshack Corp.,*
   C07-4499 EMC, 2010 WL 3155645  (N.D. Cal. Aug. 9, 2010).............13

*Tennille v. Western Union Co.*,
   No. 09-CV-00938, 2013 WL 6920449 (D. Col. Dec. 31, 2013) ...........24

*Thornton v. East Texas Motor Freight*,
   497 F.2d 416 (6th Cir. 1974) ...............................................................23

*Van Vranken v. Atl. Richfield Co*.,
    901 F. Supp. 294 (N.D. Cal. 1995).................................................16, 23

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) .........................................................13

*Vincent v. Hughes Air W., Inc.*,
   557 F.2d 759 (9th Cir. 1977) .................................................................4

*Wade v. Kroger Co*.,
   No. 01-CV-699, 2008 WL 4999171 (W.D. Ky. Nov. 20, 2008) ...........22

*Wellens v. Sankyo*,
   No. C 13-00581, 2016 WL 8115715 (N.D. Cal., Feb, 11, 2016) ..........22

*Wren v. RGIS Inventory Specialists*,
   No. C-06-05778, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)..............18

**Secondary Authorities**

*McLaughlin on Class Actions* § 6:28 (15th ed. 2018). .................................18

*Newberg on Class Actions*, §15.73 ...................................................................13

Stephen C. Yeazell, *Collective Litigation as Collective Action*, 1989 U. Ill. L. Rev. 43 (1989).........24

Elisabeth M. Sperle, *Here Today, Possibly Gone Tomorrow: An Examination of Service Awards and Conflicts of Interest in Class Action Litigation*, 23 Geo. J. Legal Ethics 873 (2010)……………...24

**Rules**

Northern District Local Rule 7-4(b) ............................................................2

### NOTICE OF MOTION AND MOTION FOR
### PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**PLEASE TAKE NOTICE THAT** on September 3, 2020 at 8:30 a.m. at the United States District Court for the Central District of California located at 350 W. 1st Street, Courtroom 9D, 9th Floor, Los Angeles, California, Plaintiff Jose Gonzalez ("Plaintiff"), individually and on behalf of those similarly situated will, and hereby does, move this Court to award Plaintiff a service award in the amount of $5,000 and Class Counsel attorney's fees in the amount of $291,666.67 as well as reimbursement of costs in the amount of $14,805.37.

This motion is made on the grounds that the requested award is fair, reasonable, and appropriate under the common fund doctrine, under either the percentage-of-the-fund method, or the lodestar method. The requested fee award represents 33 1/3% of the settlement fund—a percentage of the fund that is well within the range that courts in this circuit approve.

Additionally, Class Counsel seek reimbursement of $14,805.37 in litigation costs and expenses they incurred in connection with the prosecution of this action. The costs and expenses for which Class Counsel seek reimbursement were reasonable and necessary to this litigation and were incurred for the benefit of the classes.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration of Marcus Bradley; (4) the Declaration of Jose Gonzalez; (6) the Declaration of Lindsay Kline of Simplurius; (6) the Parties' Stipulation and Agreement of Compromise and Class Settlement ("Settlement Agreement" or "Agreement"); (7) the Notice of Class Action Settlement; (8) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (9) the records, pleadings, and papers filed in this action; and (10) such other documentary and oral evidence or argument as may be

presented to the Court at or prior to the hearing of this Motion.

Further, pursuant to Central District Local Rule 7-4(b), Plaintiff respectfully requests that this Court grant Plaintiff's relief from the twenty-five-page (25) limit and permit the filing of the attached Memorandum of Points and Authorities not to exceed thirty (30) pages.   Such additional page length is needed to fully address the issues raised in this motion.

Dated: August 13, 2020            **BRADLEY/GROMBACHER, LLP**
                                  **LAW OFFICES OF SAHAG MAJARIAN, II**


                                  By: */s/ Marcus J. Bradley*
                                       Marcus J. Bradley, Esq.
                                       Kiley L. Grombacher, Esq.
                                       Sahag Marjarian, II, Esq.

                                       Attorneys for Plaintiff and the
                                       Settlement Class

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff successfully resolved his and the Settlement Class' California Labor Code and Business and Professions Code claims resulting in a $875,000 non-reversionary settlement with an average net recovery of $237.08 per class member.   (Declaration of Lindsay Kline ("Kline Decl.") at ¶15.) Given their successful efforts in achieving monetary payments for the members of the Class, particularly in the face of significant litigation risks and uncertainties, discussed *infra*, Plaintiff and Class Counsel seek the following awards: (1) a service award in the amount of $5,000 for Plaintiff; (2) attorney fees in the amount of $291,666.67 to Class Counsel; and (3) reimbursement of Class Counsel's costs and expenses in the amount of $14,805.37.

Plaintiff seeks a modest service award in the amount of $5,000 to compensate him for his role in obtaining significant class-wide recovery and for providing a full general release of his claims.  Such amount is fair and reasonable in light of the significant time and effort Plaintiff expended assisting with this class litigation and class-wide settlement, and the risks he took in order to vindicate the rights of hundreds of other workers. For his work as a "private attorney general," *Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 958- 59 (9th Cir. 2009), Plaintiff earned the service award he seeks here. The requested payment is in line with service awards that other courts in this Circuit have approved in similar wage and hour cases.

The requested attorneys' fee award is reasonable under both the percentage-of-the-fund method and a lodestar cross-check. See *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 942, 944 (9th Cir. 2011); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Many courts within this Circuit have approved attorneys' fee awards of up to one-third of the common fund. See, e.g., *In re Pac. Enterprises Sec. Litig*., 47 F.3d 373, 379

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SERVICE AWARD, ATTORNEYS FEES AND REIMBURSEMENT OF, COSTS AND EXPENSES   Case No. ED 5:18 CV 18-1574-GW (SPx)

(9th Cir. 1995) (affirming fee award of one-third of settlement). The reasonableness of the fee request is further underscored by Class Counsel's lodestar, $208,432 to date. See Declaration of Marcus Bradley In Support of Plaintiffs' Motion for Final Approval and for Award of Service Fee, Attorneys Fees and Reimbursement of Costs ("Bradley Decl.") ¶39.) As detailed in the accompanying declaration of Marcus Bradley, Class Counsel spent more than 271 hours litigating this case (not including the additional time they will incur through final approval and distribution of settlement payments to Class Members) without any guarantee of payment, and faced substantial risk that they would not be compensated for their time. Id. The hourly rates requested by Class Counsel are consistent with the market rates for attorneys of their level of skill and experience. See, e.g., Bradley Decl. ¶¶40-44, and Ex B-D.  The requested award is thus fair, reasonable, and appropriate under the common fund doctrine, particularly in light of the meaningful results achieved and the significant risks presented.

Class Counsel are also entitled to recover their reasonable litigation expenses from the common fund. See *Vincent v. Hughes Air W., Inc*., 557 F.2d 759, 769 (9th Cir. 1977); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *28 (N.D. Cal. Aug. 17, 2018) (Koh, J.); *Lusby v. GameStop Inc*., No. C12-03783 HRL, 2015 WL 1501095, at *5 (N.D. Cal. Mar. 31, 2015) (Lloyd, J.). Here, Class Counsel seek reimbursement of $14,805.37 in reasonable litigation costs and expenses they have incurred in connection with the prosecution of this action. See Bradley Decl. ¶¶48-49, Ex F. Those costs and expenses include filing fees, copy and fax expenses, messenger expenses, postage, teleconference expenses, and legal research fees. Id.

These expenses are of the type ordinarily billed to paying clients, and were incurred for the benefit of the Class. Id.at ¶48.  Class Counsel are therefore entitled to reimbursement of these expenses.

///

4

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SERVICE AWARD, ATTORNEYS FEES AND
REIMBURSEMENT OF, COSTS AND EXPENSES   Case No. ED 5:18 CV 18-1574-GW (SPx)

## II.   FACTS AND PROCEDURE

### A.   Class Counsel Devoted Significant Time and Resources to Litigating this Case on A Contingency Basis, Despite the Risks Involved.

Class Counsel have devoted substantial time and resources to investigating and litigating this case since in the face of significant risk and uncertainty. Before filing this lawsuit, Class Counsel investigated the facts by interviewing witnesses, reviewing Plaintiff's documents, and preparing pre-filing notices to the LWDA and Cardinal. (Bradley Decl. ¶7.)

On May 31, 2018, Plaintiff filed this action Complaint against Cardinal, in the Superior Court of the State of California, County of San Bernardino, assigned Case No. CIVDS1813181 (the "State Court Action").  On July 25, 2018, Cardinal removed the State Court Action to the United States District Court for the Central District of California.  Thereafter, on November 11, 2018, Plaintiff filed the First Amended Complaint, which added the PAGA claim.  On January 24, 2020, Plaintiff filed a Second Amended Complaint ("SAC").

The SAC asserts numerous wage and hour claims against Defendant, brought on behalf of Plaintiff and on behalf of a putative class and collective and aggrieved employees.  Plaintiff alleges that Defendant (1) failed to pay all wages; (2) failed to pay overtime compensation; (3) failed to pay paid time off in violation of California Labor Code § 227.3; (4) failed to pay wages at the time of termination; (5) failed to provide proper wage statements; (6) violated the Unfair Competition Law pursuant to the California Business and Professions Code § 17200 *et seq.*; (7) failed to pay all wages and overtime compensation in violation of the Fair Labor Standards Act ("FLSA"); (8) violated the California Labor Code § 2698 *et seq.* ("PAGA"); (9) failed to provide meal periods; and (10) failed to provide rest periods.

///

Plaintiff's claims were brought on behalf of himself and a putative class of

> All employees who were or are employed by Defendants during the Class Period (The Class Period is the period from May 31, 2014, through and including the date judgment is rendered in this matter) in California as "non-exempt employees." As used in this class definition, the term "non-exempt employee" refers to those who Defendants have classified as non-exempt from the overtime wage provisions of the California Labor Code.

Plaintiff also alleged claims on behalf of a subclass of terminated employees

> All members of the Plaintiff Class whose employment ended during the Class Period (The Class Period is the period from May 31, 2014, through and including the date judgment is rendered in this matter).

The Parties engaged in substantial discovery and analysis of the underlying merits of Plaintiff's claims and potential damages. Defendant responded to requests for production and interrogatories served by Plaintiff and produced, *inter alia*, Plaintiff's personnel records including his wage statements and time records; Defendant's employment policies and procedures concerning the recording of time, overtime, attendance, meal and rest periods, and payment of wages; and a summary of electronic data regarding Class Member meal periods and time punch data. (Bradley Decl. ¶ 7).

In this regard, Defendant produced a 25% sample of class data and Plaintiff's counsel conducted an analysis of these records including engaging an expert to analyze the records and calculate damages for use in mediation. (Bradley Decl. ¶ 8).

On May 5, 2019, the parties engaged in mediation with attorney Michael E. Dickstein, a highly experienced mediator with a substantial background in resolving employment cases. (Bradley Decl. ¶ 10). Although the parties were not able to reach a resolution during the mediation, they continued to negotiate with the input of Mr. Dickstein and executed the Settlement Agreement on November 3, 2019. (Bradley Decl. ¶ 10).

**B.      Plaintiff Devoted Time and Resources to the Litigation**

Here, Plaintiff devoted significant time and resources to the litigation. Plaintiff spent a considerable amount of time learning about California labor laws, deciding whether remedial action should be taken, how it should be taken, and searching for attorneys.  Declaration of Jose Gonzales ("Gonzalez Decl.") at ¶ 10. Plaintiff spent many hours with Class Counsel discussing this case and the law. He educated his attorneys about Cardinal's policies and practices and regarding the employment practices. Id. Plaintiff searched for, and produced, multiple documents that related to his employment with Cardinal. (Id.) Plaintiff participated in mediation and the preparations therefore.

Due to such efforts, Plaintiff secured a $875,000 settlement for his fellow employees.  Plaintiff's estimated *pro rata* share of the settlement is $102.25. Kline Decl. at ¶ 16.  Such share is well under the average and, in fact, an estimated one thousand two hundred thirty-four (1,234) Class Members are anticipated to receive a higher Settlement Share than him.  Id.

Moreover, Plaintiff will provide a general release of all known and unknown claims, a broader release than that provided by the class members generally.  (Settlement Agreement at Dkt No 31-1 at p. 22-23, section 7.3.)

Despite his efforts and the broader release provided, the settlement is not contingent on the Court awarding the service payment.

**C.      Plaintiff and the Class Obtained a Highly Beneficial Settlement for Class Members.**

The $875,00 non-reversionary settlement is a substantial result for the class, particularly in light of the substantial risks and uncertainties faced by plaintiffs. On average, class members will receive individual settlement of approximately $237.08 after deduction the projected attorneys' fees, costs, service payments, PAGA allocation and administrative costs. (Declaration of Lindsay Kline (Kline Decl.") at ¶15.)

1       Courts have long recognized the inherent risks and "vagaries of litigation,"

2 and emphasized the comparative benefits of "immediate recovery by way of the

3 compromise to the mere possibility of relief in the future, after protracted and

4 expensive litigation." *Nat'l Rural Telecommunications Coop*., 221 F.R.D. at 526.

5 Proceeding to certification and subsequently through trial (and the inevitable

6 appeals) could add years or more to the resolution of this case, which has already

7 been pending for since 2018.

8       With regards to the rounding claim, Defendant has argued that it has no

9 liability because its policy is "fair and neutral on its face" and "used in such a

10 manner that it [does] not result, over a period of time, in failure to compensate the

11 employees properly for all the time they have actually worked." *See See's Candy*

12 *Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889, 907 (2012); *Corbin v. Time*

13 *Warner* 821 F.3d 1069, 1078 (9th Cir. 2016).

14       With respect to Plaintiff's wage statement claim, Defendant contends that

15 even if Plaintiff could show a technical deficiency in Defendants' pay stubs, they

16 cannot establish any injury stemming from the purported deficiency sufficient to

17 allow recovery under Cal. Lab. Code § 226(e).  *See Milligan v. Am. Airlines, Inc.*,

18 577 Fed. Appx. 718, 719 (9th Cir. 2014) ("The injury requirement ... cannot be

19 satisfied simply if one of the nine itemized requirements in [§ 226(a)] is missing

20 from a wage statement."); *Holak v. K Mart Corp.*, 2014 U.S. Dist. LEXIS 139879,

21 at *21 (E.D. Cal. Sept. 30, 2014) ("Because Plaintiff did not view her wage

22 statements (even though the injury required to find a violation of California Labor

23 Code § 226 is minimal) the minimal injury requirement is not met.") (internal

24 citation omitted); *Ridgeway v. Wal-Mart Stores, Inc.*, 2014 U.S. Dist. LEXIS

25 126806, at *28-29 (N.D. Cal. Sept. 10, 2014) ("the statute requires that an

26 employee may not recover for violations of section 226, subdivision (a) unless he

27 or she demonstrates an injury arising from the missing information") (italics in

28 original).

With respect to the waiting time penalties, Defendant contends that (1) it had a policy and practice of paying wages due upon termination; (2) it did not act willfully to the extent any wages were not paid upon termination, and waiting time penalties are recoverable only when a *willful* violation has occurred (see Cal. Code Regs. Tit. 8, § 13520; and (3) that a waiting time penalties claim cannot be based on failure to pay meal and rest period premiums. *See Singletary v. Teavana Corp.*, 2014 WL 1760884, *4 (N.D. Cal. Apr. 2, 2014) (holding that section 203 penalties for willful failure "to pay any wages of an employee" were not meant to include the payments under section 226.7).

Defendant maintains that its practice of incorporating "Post Termination Wages" into final paychecks to account for any delay eliminates any recovery on this claim. Further, Defendant maintains its rounding and vacation practices are legally compliant and that the class is not entitled to any recovery of waiting time penalties based upon meal period or rest break violations. The amounts recovered in the settlement on the basis of those claims are therefore de minimis as compared to the core claims and it does not create inequity to distribute those amounts throughout the class.  Plaintiff himself has a waiting time claim and he still signed on to the Settlement Agreement distribution mechanism**.**

With respect to the meal period claims, Defendant contends that its practices are in compliance with the law and that it paid meal period premiums when called for as reflected by the premiums that were included in the records produced to Plaintiff.  Defendants also had additional arguments on the merits of the meal and rest period claims, including that it maintained compliant meal period policies and practices and provided class members the opportunity to take legally-compliant meal periods.

Moreover, as developments throughout this litigation have shown, the law regarding certification of similar claims and class-wide proof of damages by just and reasonable inference in wage and hour cases, among other issues, is

9

precarious. Additionally, in late 2015, the California Private Attorneys General Act (PAGA) was amended to allow employers the right to "cure" certain commonly litigated defects in employee wage statements within 65 days of notice by the employee in order to avoid litigation. Such amendment represents the general risk of the law changing over time. These are just a few examples of how Plaintiff's claims could have been weakened or obviated by legislation or unfavorable legal rulings during the pendency of litigation and appeal.

While Plaintiff believes the Class Claims would have prevailed on class certification and on the merits of their claims, the settlement eliminates any risk that Class Members might not recover any money.

Additionally, early resolutions save time and money that would otherwise go to litigation.  Parties' resources, as well as the Court's, would be further taxed by continued litigation.  And if this action had settled following additional litigation, the settlement amount would likely have considered the additional costs incurred, such that there may have been less available for Class Members. Cost savings is one reason why California policy strongly favors early settlement.  *See Neary v. Regents of University of California*, 3 Cal. 4th 273, 277 (1992) (explaining the high value placed on settlements and observing that "[s]ettlement is perhaps most efficient the earlier the settlement comes in the litigation continuum."). Moreover, given that the class members in this case are primarily low wage workers, for whom receiving speedy remuneration is particularly important, the potential for years of delayed recovery is a significant concern. Considered against the risks of continued litigation, and the importance of the employment rights and a speedy recovery to plaintiff class members, the totality of relief provided under the proposed Settlement is more than adequate and well within the range of reasonableness. This concern also supports settlement.

///

## III.   ARGUMENT

### A.   The Attorneys' Fees Sought Are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method.

Class Counsel seek fees in the amount of $291,666.67, or 33 1/3% of the settlement fund. The amount requested is reasonable under both the percentage-of-the-fund method and a lodestar cross-check.

### B.   Class Counsel Are Entitled to an Award of Attorneys' Fees Because the Litigation Recovered a Certain and Calculable Fund for the Plaintiff Classes.

Courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, class counsel have an equitable right to be compensated from that fund as a whole. See, e.g., *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (U.S. Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund … is entitled to a reasonable attorney's fee from the fund as a whole"); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (recognizing common fund doctrine). The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients, and that unless attorneys' fees are paid out of the common fund, those who benefit from the fund will be unjustly enriched. *Boeing Co.*, 444 U.S. at 478. To prevent this unfair result, courts exercise their inherent equitable powers to assess attorneys' fees against the entire fund, thereby spreading the cost of those fees among all those who benefit from it. Id.

The settlement of this litigation resulted in the recovery of $875,000 to be distributed to Class Members. Because none of the Class Members paid fees to Class Counsel for their efforts during the litigation, equity requires Class Members to pay a fair and reasonable fee, based on what the market would traditionally require, no less than if they had hired private counsel to

litigate their case individually. *Id*. at 478-82.

## C. The Requested Fee Is Reasonable Under the Percentage-of-the-Fund Method.

Where, as here, fees are requested from a common fund, the court has discretion to use either the percentage-of-the-fund method or the lodestar method to evaluate the reasonableness of the fee amount requested. *In re Bluetooth*, 654 F.3d at 942. In common fund cases, it is widely accepted for courts to award fees "based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); see *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 953 (9th Cir. 2015) (district court appropriately calculated the fee award as a percentage of the total settlement fund, including notice and administrative costs and litigation expenses); *Six (6) Mexican Workers*, 904 F.2d at 1311 ("[A] reasonable fee under the common fund doctrine is calculated as a percentage of the recovery."); *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) (recognizing a "recent ground swell of support for mandating a percentage-of-the-fund approach in common fund cases").

Many federal courts within this Circuit have awarded one-third of the common fund in fees. See, e.g., *Bower v. Cycle Gear, Inc*., No. 14-CV-02712-HSG, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (approving fee award of 30% of the settlement fund, which was equivalent to class counsel's lodestar with a multiplier of 1.37); *In re Pac. Enterprises*, 47 F.3d at378-79 (affirming fee award of 33 percent of settlement); *Hester v. Vision Airlines, Inc*., 2014 WL 3547643 at *11 (D. Nev. July 17, 2014) (awarding 30% of common fund); *Ching v. Siemens Industry, Inc*., C11-4838 MEJ, 2014 WL 2926210 at *7-8 (N.D. Cal. June 27, 2014) (awarding 30% of gross settlement fund of $425,000); *Elliott v. Rolling Frito-Lay Sales LP*, 2014 WL 2761316 at *8 (C.D. Cal. June 12, 2014) (awarding 30% of gross settlement fund);

*Barbosa v. Cargill Meat Solutions Corp.*, 1:11-CV-00275-SKO, 2013 WL 3340939, at *15 (E.D. Cal. July 2, 2013) (awarding 33.3% of fund in wage-and-hour class action); *Estrella v. Freedom Fin. Network, LLC*, C09-03156 SI, 2012 WL 4645012, at *3 (N.D. Cal. Oct. 1, 2012) (awarding 33⅓ percent of $1.9 million settlement fund); *Stuart v. Radioshack Corp.,* C07-4499 EMC, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010) (awarding one-third of settlement fund in wage and hour class action and noting that "[t]his is well within the range of percentages which courts have upheld as reasonable in other class action lawsuits"); *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (awarding 33⅓ percent in wage and hour class action); *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *8-9 (S.D. Cal. June 1, 2010) (awarding 33⅓ percent); *In re Heritage Bond Litig.,* No. 02-ML-1475 DT, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005) (awarding one-third of common fund). Indeed,"[n]ationally, the average percentage of the fund award in class actions is approximately one third." *Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles,* No. CV 07- 3072 AHM, 2009 WL 9100391, at *4 (C.D. Cal. June 24, 2009); see also *Newberg on Class Actions*, §15.73, and the cases cited therein: "regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."

### D. The Requested Fee is Reasonable Under the Lodestar Cross-Check.

#### 1. Class Counsel's Lodestar Exceeds the Fee Amount Requested, and Is Based on Reasonable Hours and Rates.

While courts have discretion in common fund cases to calculate a fee award using either the percentage-of-the-fund approach or the lodestar approach, courts are encouraged to crosscheck both figures against one another to confirm the reasonableness of the award. In re *Bluetooth*, 654 F.3d at 942, 944-45; *Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee

13

1  award remains the percentage method, the lodestar may provide a useful
2  perspective on the reasonableness of a given percentage award.").

3       Here, a lodestar cross-check confirms that the 30% fee award requested
4  is reasonable. As set forth in the accompanying declaration of Marcus Bradley,
5  Class Counsel's lodestar to date exceeds $208,432 (which does not include the
6  time spent preparing this motion for fees, or the time that Class Counsel will
7  spend on the motion for final approval of the settlement and settlement
8  administration). The hours and rates used to calculate Class Counsel's lodestar
9  are reasonable. Class Counsel have devoted more than 270 hours to this
10 litigation. Bradley Decl. ¶¶36, 39. As reflected above and in the accompanying
11 declarations of Class Counsel, this time was spent on numerous essential
12 litigation tasks in prosecuting this action, including but not limited to: (1)
13 conducting pre-filing investigation, both legal and factual; (2) drafting the
14 complaints; (3) conducting informal ongoing investigation, including
15 interviewing class members; (4) drafting initial disclosures and reviewing
16 documents produced in discovery; (5) preparing for and participating in
17 settlement negotiations; (6) revising and negotiating the Settlement
18 Agreement, preparing for the motion for preliminary approval, appearing at the
19 motion for preliminary approval hearing, and other settlement tasks; (7) case
20 management; and (8) communicating with class members. Id. ¶¶7-11.

21      In calculating this lodestar hours figure, Class Counsel exercised billing
22 judgment as they would for a fee-paying client, reducing hours to eliminate
23 redundancies, inefficiencies, and other time not appropriately charged to a
24 paying client. Id. ¶39.

25      Moreover, because the declarations report time before the filing of this
26 motion, they do not reflect additional work Class Counsel will have performed
27 by the time this motion is heard, including briefing the motion for final
28 approval and overseeing the settlement notice process—all time for which

Class Counsel will not seek additional compensation.

The rates used in calculating Class Counsel's lodestar are also reasonable. The lodestar should be calculated using hourly rates that are "the prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895. Courts typically apply each attorney's current rates for all hours of work regardless of when performed to account for the delay in payment resulting from the years it took to litigate the case. See *Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989) (court should account for delay in payment by applying current rather than historic hourly rates); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 453-54 (9th Cir. 2010). Here, Class Counsel's experience, reputation, and ability justify the rates charged. See Bradley Decl. ¶¶25-35, 40-44; Further, these rates are commensurate with those prevailing for attorneys with comparable skill and experience litigating complex wage-and-hour class and collective actions. Id. at ¶¶41-44, Ex B-E. These hourly rates, or their historical equivalents, have been paid to Class Counsel by paying clients, and have repeatedly been approved by other courts. Id.

## 2.    The Legal Principles Behind Risk Multipliers Further Support the Reasonableness of the Fee Requested.

In common fund cases, courts frequently apply multipliers to the lodestar to reflect the risks involved, the complexity of the litigation, and other relevant factors. See *Vizcaino*, 290 F.3d at 1051 (courts "routinely enhance[] the lodestar to reflect the risk of non-payment in common fund cases") (internal quotation marks and citation omitted). Such an enhancement "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." Id. For these reasons, courts routinely enhance lodestar amounts based on multipliers ranging from 2 to 4 or even higher. See id. (approving multiplier of 3.65); *Perkins v. Linkedin Corp.*,

15

No. 13-CV-04303-LHK, 2016 WL 613255, at *15 (N.D. Cal. Feb. 16, 2016) (multiplier of 1.45 was reasonable); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (awarding multiplier of 5.2 and collecting cases with cross-check multipliers ranging from 4.5 to 19.6); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (noting that multipliers in the 3-4 range are common in class action lodestar awards).

As the case law suggests that Class Counsel here is justified in seeking a risk multiplier. Here, Class Counsel would require just under a 1.3 multiplier. The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *In re Omnivision, Inc*, 559 F. Supp. 1036 2d at 1047 (N.D. Cal. 2008). In this case, Class Counsel have invested more than 270 hours of work with no compensation. See Bradley Decl. ¶¶ 36, 39 Moreover, Class Counsel have done so while facing the real possibility of no recovery. This factor also supports the requested fees.

### E.   Class Counsel are Entitled to Recover Their Reasonable Litigation Costs

Class Counsel also request reimbursement from the fund in the amount of $14,805.37 for litigation costs and expenses reasonably incurred, which is $6,000 less than the $20,000 they are authorized to seek under the terms of the Settlement Agreement. Settlement Agreement [cite]. Like attorneys' fees, these expenses should be paid from the common fund because all Class Members should share their fair share of the costs of the litigation, from which they benefitted. The expenses for which Class Counsel seek reimbursement are the normal costs of litigation that are traditionally billed to paying clients. See, e.g., *Vincent*, 557 F.2d at 769; *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys should recover reasonable out of pocket costs of the type ordinarily billed to paying

clients). Class Counsel have incurred at least $14,805.37 in litigation costs and expenses to date, and will inevitably incur additional necessary costs through the conclusion of this matter for which they will not be reimbursed, including costs related to the motions for final approval, attorneys' fees, and service awards, and overseeing the settlement administration process. The expenses for which Class Counsel seek reimbursement are detailed in the supporting declaration of Class Counsel but generally include filing, service, mediation and expert fees. Bradley Decl. ¶¶48, 49, Exhibit F.

As set forth therein, all of these costs were necessary to the prosecution of this litigation, were the sort of expenses normally billed to paying clients, and were made for the benefit of the class. Id. at ¶¶48. Accordingly, they are reimbursable. See, e.g., *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007).

## F.   The Court Should Approve the Requested Service Award in Recognition of Plaintiff's time and Effort and the Risk He Undertook in Service to the Class

Class representatives play a crucial role in bringing justice to those who would otherwise be unable to vindicate their rights. See Rodriguez, 563 F.3d at 958–59 (service awards may recognize a plaintiff's "willingness to act as a private attorney general"). In the Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases." Id. at 958. "Numerous courts in the Ninth Circuit and elsewhere have approved service awards of $20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class." *Garner v. State Farm Mut. Auto Ins.*, No. 08-CV-1365, 2010 WL 1687832, at *17, n.8 (N.D. Cal. Apr. 22, 2010) (collecting cases). In examining this commitment to the class and the reasonableness of a requested service payment, courts must consider all "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those

17

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SERVICE AWARD, ATTORNEYS FEES AND REIMBURSEMENT OF, COSTS AND EXPENSES   Case No. ED 5:18 CV 18-1574-GW (SPx)

actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (citation omitted).

Here, each of these factors weigh in favor of granting this motion. The $5,000 that Plaintiff seeks is a reasonable amount to compensate Plaintiff for the time he spent pursuing this case, the risk involved in bringing this case as named Plaintiff, the delay resulting from bringing this case on a class rather than an individual basis, the information and insight he provided to class counsel to prosecute the case efficiently, his role in the settlement process, and the service rendered to the unnamed class members resulting from the settlement achieved in this case. As discussed in detail below and in Plaintiff's declaration submitted herewith, Plaintiff contributed an exceptional amount of time and effort on behalf of the class.

### 1.    By Initiating This Action and Devoting Substantial Time to Assist with the Successful Prosecution and Settlement of the Act, Plaintiff Benefited the Class as a Whole

Service awards are payments to class representatives for their service to the class in bringing the lawsuit. See *Rodriguez*, 563 F.3d at 958-59; see also 2 *McLaughlin on Class Actions* § 6:28 (15th ed. 2018). Class representatives bring critical factual knowledge to employment class actions, including information about employer policies and practices that affect wages. See *Wren v. RGIS Inventory Specialists*, No. C-06-05778, 2011 WL 1230826, at *32-37 (N.D. Cal. Apr. 1, 2011) supplemented, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (recognizing Plaintiffs' efforts in time spent meeting with class counsel and informing them of employers' practices and procedures, as well as reviewing pleadings and motions, searching for and producing documents and responding to interrogatories).

///

1    Here, Plaintiff protected the interests of the class by bringing this action and

2    spending numerous hours assisting in the prosecution and settlement of this case.

3    Because of his efforts, the entire class will now benefit from the settlement of the

4    case. Plaintiff now submits a declaration in support of this motion for a service

5    award describing the tasks he performed as the named, representative Plaintiff and

6    the details of his participation in assisting in the prosecution of this case.

7    Plaintiff initiated this case on behalf of the class, conferred with class

8    counsel multiple times before the lawsuit was filed to inform counsel of the facts

9    underlying his claims, provided counsel with relevant documents and the names of

10   other witnesses, and reviewed the draft complaints. Gonzalez Declaration at ¶¶ 9-

11   10.

12   Among other tasks detailed in his declaration, Plaintiff spent significant

13   time searching for and providing documents, conferring with counsel and

14   participating in the mediation and settlement discussions culminating in the

15   settlement of this case by conferring with class counsel in preparation for the

16   settlement. Id. at ¶10.

17   Plaintiff committed an exceptional amount of time and effort to this

18   litigation, from initiating the suit by seeking out qualified and suitable class

19   counsel, to his involvement and dedication to the case at each stage of the lawsuit.

20   See generally Id., ¶¶ 9-12. In addition to the hours that Plaintiff expended

21   pursuing these class claims, he provided class counsel with information and

22   documents regarding the litigation which was essential to framing the claims in

23   his Complaints and prosecuting the case, thereby substantially reducing the need

24   for formal pretrial discovery. Bradley Decl. ¶52. By actively participating in

25   settlement strategy and negotiations, Plaintiff contributed significantly to the

26   successful outcome of the case. Id., ¶ 53. For these efforts in furtherance of the

27   class, this Court should grant the requested service award.

28   ///

### 2.   The Risks Plaintiff Took Support his Request for a Service Award

Service awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant "reputational risk" by bringing suit against their former employers. *Rodriguez*, 563 F.3d at 958-59; *Brazil v. Dell Inc*., No. C-07-01700, 2012 WL 1144303, at \*2-3(N.D. Cal. Apr. 4, 2012). In the workplace context, where workers are often blacklisted if they are considered "trouble makers," employees who sue their employers are particularly vulnerable to retaliation and termination. See *In re High-Tech Employee Antitrust Litig*., No. 11-CV-02509- LHK, 2015 WL 5158730, at \*16–18 (N.D. Cal. Sept. 2, 2015) (granting service awards based in part on the named plaintiffs' risk of future workplace retaliation and diminished future employment prospects for being labeled "troublemakers" in their industry); *Nitsch v.*

*DreamWorks Animation SKG Inc*., No. 14-CV-04062-LHK, 2017 WL 2423161, at \*14 (N.D. Cal. June 5, 2017) (same); *Connolly v. Weight Watchers N. Am. Inc*., No. 14-CV-01983, 2014 WL 3611143, at \*4 (N.D. Cal. July 21, 2014) (named plaintiffs assume "the risk of being stigmatized or disfavored by their current or potential future employers by suing their Apr. 8, 2011) (awarding enhancements to named plaintiffs in recognition that "they risk their good will and job security in the industry for the benefit of the class as a whole"); *Ross v. U.S. Bank Nat. Ass'n*, No. 07-02951, 2010 WL 3833922, at \*2 (N.D. Cal. Sept. 29, 2010) (enhancements based on "willingness to serve as representatives despite the potential stigma that might attach to them in the banking industry from taking on those roles").

Here, Plaintiff undertook significant risk and burden in coming forward and filing suit against Defendant as named Plaintiff. See *Guippone v. BH S&B Holdings, LLC.*, No. 09-CV-01029, 2011 WL 5148650, at \*7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on

the internet and may become known to prospective employers when evaluating that person."). Although Plaintiff could likely have confidentially resolved his individual claims, he was willing to risk exposure and act as the named Plaintiff to secure a remedy not only for himself, but for his fellow workers who might be unwilling, afraid, or unable to bring their own case. See Nantiya Ruan, Bringing Sense to Service Payments: An Examination of Service Payments to Named Plaintiff in Employment Discrimination Class Actions, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) (discussing the realistic fear of reprisal facing employees who bring workplace law class actions). The risk of retaliation and deterred future employment weighs in favor of the requested service award.

### 3.   The Reasonableness of Plaintiff's Request Favors Granting a Service Award

The amount being requested, $5,000 for the only named Plaintiff, is reasonable in light of the factors courts balance to ascertain the reasonableness of service payments. Courts balance "the number of named plaintiffs receiving service payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Staton*, 327 F.3d at 977; see also *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008).

Here, the proportion of the requested incentive award to class members' individual recoveries is reasonable. See *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (considering the same *Staton* factors and affirming service awards of $5,000 for nine plaintiffs). The total service award ($5,000) is approximately 0.5 percent of the total settlement value of $875,000. This is not a case where the representative plaintiff receives many thousands of dollars while the class members get a coupon or nominal damages. See *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-CV-01109-JST, 2018 WL 3108991, at *8 n.5 (N.D. Cal. June 25, 2018) (indicating that the court would be unlikely to award a service payment in an amount that was "approximately 500 times the size of the

average award for other class members."). Here, pursuant to the plan of distribution, the average payment to the class members will be approximately $237.08. Kline Decl., ¶15.

In addition, the named Plaintiff agreed to execute a broader release than the releases that apply to other class members. (Settlement Agreement), ¶¶III.D, III.M.3. This release warrants additional compensation. See *Dent v. ITC Serv. Grp., Inc.*, No. 12-CV-0009, 2013 WL 5437331, at *4 (D. Nev. Sept. 27, 2013) (awarding enhancement in part because wage plaintiff signed a general release); *Wade v. Kroger Co.*, No. 01-CV-699, 2008 WL 4999171, at *13 (W.D. Ky. Nov. 20, 2008) (awarding plaintiffs additional compensation because they agreed to a "release of all claims . . . that is broader than the release given by other members of this class"); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. 02-CV-3780, 2006 WL 2671105, at *4 (D. Minn. Sept. 18, 2006) (authorizing additional payments to plaintiff who "g[a]ve additional consideration-that is, a broader release of claims than the release to be signed by other class members").

Finally, the service payment that Plaintiff seeks is in line with and, in some cases, is much lower than awards approved by other federal judges in class actions in this Circuit. See, e.g., *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-MD-2541- CW, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017) (awarding $20,000 to each class representative); *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1003 (N.D. Cal. 2017) (awarding $15,000 to each of nine class representatives); *Wellens v. Sankyo*, No. C 13-00581, 2016 WL 8115715, at *4 (N.D. Cal., Feb, 11, 2016) (awarding $25,000 to each of the six named Plaintiffs in an action alleging gender discrimination in the workplace "in light of their time and effort pursuing this litigation, the substantial benefit to the Class from the Settlement, and the risks that they have faced in representing the Class"); *Graham v. Overland Solutions, Inc.*, No. 10-CV-0672 BEN, 2012 WL 4009547, at *8 (S.D. Cal. Sept. 12, 2012)

22

(awarding $25,000 to each named plaintiff for their time, effort, risks undertaken for the payment of costs in the event the action had been unsuccessful, stigma upon future employment opportunities for having initiated an action against a former employer, and a general release of all claims related to their employment); *Garner*, 2010 WL 1687832, at *17 n.8 ("Numerous courts in the Ninth Circuit and elsewhere have approved service awards of $20,000 or more") (collecting cases); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) aff'd, 331 F. App'x 452 (9th Cir. 2009) (approving payments of $25,000 to each named plaintiff); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (awarding $50,000 to a lead plaintiff).

### 4.   Plaintiff should be Awarded a Service Payment to Encourage Private Attorneys General to Enforce Important Remedial Statutes.

Courts in this Circuit routinely grant service payments as sound policy that encourages "private attorneys general" to bring important civil rights and wage rights cases that would not otherwise be heard. *Rodriguez*, 563 F.3d at 958-59. Many courts justify service payments based on the need to encourage litigants to bring class actions, furthering the public policy underlying the statutory scheme. *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) ("We also think there is something to be said for rewarding those [employees] who protest and help to bring rights to a group of employees who have been the victims of [employer wrongdoing]."); *see also In re Smithkline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 535 (E.D. Pa. 1990) (approving $5,000 award because named Plaintiff "rendered a public service" and "conferred a monetary benefit" on the shareholder class). As one court noted:

> The purpose of service awards for class representatives is to encourage people with significant claims to pursue actions on behalf of others similarly situated. Numerous courts have recognized that service awards are an efficient and productive

> way of encouraging members of a class to become class representatives, and in rewarding individual efforts taken on behalf of the class.

*Tennille v. Western Union Co.*, No. 09-CV-00938, 2013 WL 6920449, at \*14 (D. Col. Dec. 31, 2013) (internal quotations and citations omitted). "Collective litigation is the compromise of individual positions, interest and autonomy in the service of a joint good." Stephen C. Yeazell, *Collective Litigation as Collective Action*, 1989 U. Ill. L. Rev. 43, 46 (1989). Without individuals who are willing to step forward and represent a class, the public policy goals of class actions will be undermined as fewer individuals would be willing to serve the greater good by investing their personal time and resources and exposing themselves to the potential risks and harms for doing so. In fact, "[r]ecent case law seems to reflect a judicial attitude that encouraging participation in class actions suits is a societal good, and if a fee is needed in order to ensure more people are willing to 'take the plunge' by serving as the named plaintiff in a class action lawsuit, then incentive awards can be justified." Elisabeth M. Sperle, *Here Today, Possibly Gone Tomorrow: An Examination of Service Awards and Conflicts of Interest in Class Action Litigation*, 23 Geo. J. Legal Ethics 873, 877 (2010).

Moreover, as a matter of public policy, class representatives should be rewarded for the personal sacrifices they made to vindicate the rights of others. Courts have recognized that serving as a named class representative requires personal sacrifice. See, e.g., *Barrera v. Home Depot U.S.A., Inc.*, No. 12-CV-05199-LHK, 2015 WL 2437897, at \*2 (N.D. Cal. May 20, 2015) (identifying financial and other risks as a factor to considering in awarding service payments); *Sauby v. City of Fargo*, No. 07-CV-10, 2009 WL 2168942, at \*2 (D. N. Dakota, Jul. 16, 2009) (citing *Droegemueller v. Petroleum Development Corp.*, 2009 WL 961539 (D. Colo. Apr. 7, 2009)); see also Sperle, 23 Geo. J. Legal Ethics at 880-82 (2010) (identifying personal sacrifice, opportunity costs, personal burdens and

risk of retaliation for named class representatives).

This Court should thus grant the service payment to Plaintiff in recognition of his compromises and service to the common good.

**5.    Class Members Had Notice and an Opportunity to Object to Plaintiff's Request for a Service Award, Attorneys' Fees and Costs. To Date, No Class Member Has Objected to the Fees or Costs Requested.**

The Notice of Settlement, sent to all Class Members described the terms of the settlement, including the maximum amounts Plaintiff was authorized to request and receive for a service award, attorneys' fee and costs. Kline Decl., Ex A at Section 5.  No class members have objected to the service award, fee request or cost reimbursement requests.  Kline Decl. ¶¶10-11.  This also supports granting the requested fees. See, e.g., *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *18 (N.D. Cal. Feb. 11, 2016)

## IV.   CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court award Plaintiff a service award in the amount of $5,000, Class Counsel $26 in attorneys' fees and $14,805.37 in costs and expenses from the Settlement Fund.

Dated: August 13, 2020               **BRADLEY/GROMBACHER, LLP**
                                      **LAW OFFICES OF SAHAG MAJARIAN, II**


                                      By*: /s/ Marcus J. Bradley*
                                           Marcus J. Bradley, Esq.
                                           Kiley L. Grombacher, Esq.
                                           Sahag Marjarian, II, Esq.

                                           Attorneys for Plaintiff and the
                                           Settlement Class